**FILED**

**1:25 pm, 3/9/23**

**Margaret Botkins**
**Clerk of Court**

Isaac N. Sutphin, P.C. (Wyo. State Bar # 6-3711)
Andrea N. Grave (Wyo. State Bar # 8-6702)
HOLLAND & HART LLP
2515 Warren Avenue, Suite 450
P.O. Box 1347
Cheyenne, WY 82003-1347
Telephone: (307) 778-4200
insutphin@hollandhart.com
angrave@hollandhart.com

T. Scott Thompson (*pro hac vice* forthcoming)
Jonathan P. Garvin (*pro hac vice* forthcoming)
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
555 12th Street NW, Suite 1100
Washington, DC 20004
Telephone: (202) 434-7440
SThompson@mintz.com
JPGarvin@mintz.com

ATTORNEYS FOR PLAINTIFFS
HORIZON TOWER LIMITED, LLC
and HORIZON TOWER, LLC

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| HORIZON TOWER LIMITED, LLC and HORIZON TOWER, LLC, | |
| Plaintiffs, | |
| v. | Civil Action No.:  23-CV-37-J |
| PARK COUNTY, WYOMING; BOARD OF COUNTY COMMISSIONERS OF PARK COUNTY, WYOMING; DOSSIE OVERFIELD, LLOYD THIEL, LEE LIVINGSTON, SCOTT MANGOLD, and SCOTT STEWARD, in their official capacity as Members of the Board of County Commissioners for Park County, Wyoming; | |
| Defendants | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND EXPEDITED TREATMENT

For their Complaint against Defendants Park County, Wyoming; Board of County

Commissioners of Park County, Wyoming; and Dossie Overfield, Lloyd Thiel, Lee Livingston,

Scott Mangold and Scott Steward, in their official capacity as Members of the Board of

Commissioners of Park County, Wyoming (collectively, "County" or "Defendants"), Plaintiffs

Horizon Tower Limited, LLC and Horizon Tower, LLC (collectively "Horizon" or "Plaintiffs"),

by and through their undersigned counsel, upon knowledge as to their own actions and dealings

and upon information and belief as to Defendants and their actions, allege as follows:

## NATURE OF THE ACTION

This action arises from the Defendants' unlawful denial of the Plaintiffs' application to

construct a wireless telecommunications facility in the form of a monopole tower at 2944 N.

Fork Hwy, Cody, WY 82414. The County's denial effectively prohibits personal wireless service

in the vicinity of the proposed facility and is not supported by substantial evidence in a written

record.   Accordingly, the County's denial of Horizon's application violates and is preempted by

the Federal Communications Act, as amended, 47 U.S.C. § 332(c)(7)(B) (the "Communications

Act" or "Act"). Horizon, therefore, seeks a declaratory judgment and order from this Court

directing the County to grant Horizon's application for the proposed facility in accordance with

the Communications Act.

Plaintiffs request expedited treatment of this Complaint pursuant to 47 U.S.C.

§ 332(c)(7)(b)(v).

## PARTIES

1.      Plaintiff Horizon Tower Limited, LLC is a Kansas limited partnership with its

principal place of business in Danville, California.  Plaintiff Horizon Tower, LLC is a limited

liability company with its principal place of business in Danville, California. Horizon Tower,

LLC is the operations partner for Horizon Tower Limited, LLC.  Horizon Tower Limited, LLC is

registered to do business in the State of Wyoming. Horizon owns and manages tower assets and

wireless infrastructure that are used by national and regional wireless carriers to provide personal wireless services to end-user consumers in Wyoming and throughout the western United States.

2.     Defendant Park County is a county located in northwest Wyoming.

3.     Defendant Board of County Commissioners of Park County ("Board") is the governing board of Park County, Wyoming.  It is authorized to manage the business concerns of the County and is delegated the authority to, among other things, make final decisions on zoning changes and applications and grant special use permits (such as those require to construct communications facilities in certain zoning districts) and variances, as prescribed by law and regulation.

4.     Defendants Dossie Overfield, Lloyd Thiel, Lee Livingston, Scott Mangold and Scott Steward served as Commissioners on the Board that denied Horizon's application at issue in this litigation.  Each individual defendant is named solely in his or her official capacity as a Commissioner.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because of federal questions arising under the Communications Act of 1934, as amended by the Telcommunications Act of 1996 (the "Communications Act"). The Court has the authority to issue declaratory judgment relief pursuant to 28 U.S.C. § 2201(a).

6.     Horizon has standing pursuant to 47 U.S.C. § 332(c)(7)(B)(v) as a person adversely affected by Defendants' final actions that are inconsistent with 47 U.S.C. § 332(c)(7)(B).

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), in that a substantial part of the acts, events, or omissions giving rise to this action occurred in Park County, Wyoming, in the District of Wyoming.

### STATEMENT OF FACTS

**Federal Statutory Control of Wireless Siting**

8.      The Communications Act governs federal, state, and local government authority over the siting of personal wireless service facilities, such as the one at issue here. 47 U.S.C. § 332(c)(7)(B).

9.      The Communications Act further provides that any person adversely affected by a state or local government's act, or failure to act, that is inconsistent with 47 U.S.C. § 332(c)(7) of the Communications Act may seek review in federal courts and that the courts shall hear and decide the action on an expedited basis. 47 U.S.C. § 332(c)(7)(B)(v).

10.     Horizon constructs, owns, and manages tower assets and wireless infrastructure that are used by national and regional wireless carriers to provide personal wireless services to end-user consumers in Wyoming and elsewhere in the United States. Horizon leases space on its facilities to national and regional personal wireless services providers, including Verizon ("Verizon"), who provide personal and advanced wireless services and other telecommunications services, as those terms are defined under federal law, to end-user wireless customers. In providing this valuable service to wireless carriers, Horizon is facilitating the development and deployment of advanced wireless services and broadband connectivity consistent with the goals of the Communications Act.

11.     To provide reliable personal wireless service to an end user, coverage and capacity from cell sites must overlap in a grid pattern resembling a honeycomb. If Horizon

cannot construct a cell site within a specific geographic area, the wireless carriers it serves will not be able to provide service to consumers within that area.

12.     To determine where a new wireless facility is required, radio frequency ("RF") engineers use various techniques, such as sophisticated computer modeling programs and field testing, to complete a field propagation study, which shows where cell sites need to be located to provide service. The propagation study also considers the land's topography, the coverage boundaries of neighboring cell sites, and other factors. For a wireless network to perform adequately, cell sites must be located, constructed, and operated so that the wireless carrier can achieve reliable service for its customers. If there is no functioning cell site within a given area, there will not be reliable service for customers within that area, and customers who live or travel in the area will experience an unacceptable service level, including unacceptable levels of dropped calls and connection failures, including the potential inability to make E-911 emergency calls.

## THE PROPOSED FACILITY AND APPLICATION PROCESS

13.     Based upon research and analysis by RF engineers, Verizon determined that it has a significant gap in its ability to provide service in Park County in the area along Highway 14-16-20, near Wapiti, Wyoming.

14.     This gap in service is significant based on the population and vehicular traffic in the area.

15.     The nearest tower with Verizon antennas is 16.52 miles away from the area of the service gap, and there are no other registered towers or tall structures near the site of the service gap that are feasible or available for installation of personal wireless equipment.

16.     Verizon provided Horizon with a search area established by its RF engineers and requested that Horizon develop a wireless communications facility somewhere within that search area so that Verizon may remedy its significant gap in service in that area.

17.     Horizon investigated suitable properties within the search area that were potentially appropriate for a wireless communications facility. An appropriate candidate would have to fill the significant gap in service, comply with local zoning standards, be leasable, and be buildable. Horizon considered and ruled out multiple properties as alternative locations for its proposed facility. For example, Horizon had to rule out the properties that were in the search ring but were located within the Greencreek subdivision because the subdivision's covenants, conditions and restrictions prohibit the placement of a communications tower. In addition, several other sites within the search ring were evaluated, but none of the property owners were willing to allow Horizon to install a tower on their property.

18.     After investigating and evaluating properties within the search area, Horizon concluded that the subject site at 2944 N. Fork Hwy, Cody WY 82424 (the "Proposed Site"): (1) was in the search area; (2) was in a zone in which wireless communications facilities are allowed, subject to obtaining a Special Use Permit ("SUP"); (3) had a property owner willing to lease a portion of the land for construction of a wireless facility; and (4) was suitable for constructing and maintaining a wireless communications facility.

19.     The property on which the Proposed Site would be located is a 29.94-acre parcel within Park County in a General Rural 5-Acre (GR-5) zoning district.

20.     Chapter IV, Section 2(e)(1)(D)(iv) of the *Park County 2015 Development Standards and Regulations* (the "County Code") classifies "communication towers over 35 feet in height" as a "major utility use."

21.     A major utility use, according to County Code Table 4-1, Schedule of Uses, is permitted in the GR-5 zoning district with an SUP.

22.     Chapter IV, Section 4(d)(2) of the County Code sets forth zoning requirements for SUP applications and provides that a complete SUP application requires the following written and graphic submissions:

    a.  Written Material:

        i.   Completed application form;
        ii.  Written statement from the property owner consenting to the filing of the application if the applicant is not the property owner;
        iii. Legal description and acreage;
        iv.  Description of proposed use including, if applicable: amount of building square footage; types of activities; method of operation; hours of operation; and characteristics having impact on adjacent properties.
        v.   Evidence that an adequate water supply in terms of quantity, quality, and dependability for the use is or will be available;
        vi.  Evidence that an adequate means of sewage and wastewater disposal is or will be available;
        vii. Evidence that utilities, public services and infrastructure are available to serve the use;
        viii. Soils report prepared by the local soil conservation district, or a professional soils engineer or geologist when appropriate;
        ix.  Proposed covenants, if any;
        x.   Statement of how the required findings for approval of a Special Use Permit can be met by the proposal;
        xi.  Statement of how compatibility with adjacent properties will be achieved;
        xii. If special criteria as defined in Standards for Specific Uses have been established for the proposed use, a statement of how these criteria will be met; and
        xiii. If the proposal is in an Airport Overlay District, a written recommendation from the appropriate airport Board or official;
        xiv. If the development is located within the boundaries of an Irrigation District, the applicant shall establish a plan regarding the attached water rights and easements for irrigation facilities
    b.  Graphic Material:
        i.   Vicinity map;
        ii.  Plan-view drawing showing building locations, parking areas, access and circulation, storm water drainage, and activity areas;
        iii. Building floor plans and elevations; and
        iv.  Map showing site topography and natural features.

23.     Under Chapter IV Section 4(d)(3), the Planning and Zoning Commission ("P&Z Commission") and Board shall approve a SUP application only if it finds that:

a.  Compatibility and Impacts: The use is in harmony and compatible with surrounding land uses and with the neighborhood and will not create a substantial adverse impact on adjacent properties;

b.  Services and Infrastructure: Adequate services and infrastructure are available to serve the use, or the applicant has agreed to provide services and infrastructure in sufficient time to serve the proposed use.

c.  Specific Criteria: The use complies with all specific criteria stated in these regulations for the use; and

d.  Overlay Districts: The use complies with additional requirements of overlay districts, if applicable

24.     The Proposed Site is owned by Tamara Young, who has consented to Horizon entering her property to perform the work related to the proposed project and file documents related to that work.  Ms. Young and Horizon entered into a Lease Agreement dated August 15, 2022.

25.     On October 17, 2022, Horizon applied to the County for a SUP to construct and install a communications tower at the Proposed Site ("Application"). In support of its Application, Horizon submitted all materials required by the County Code, including, among other things, plan-view drawings showing the proposed location, vicinity map, and type of activity to be conducted at the Proposed Site. Horizon also submitted a site survey, an alternate site analysis, an RF design analysis, and a supporting narrative describing how the findings required for approval of the SUP would be met.

26.     Horizon's Application proposed the construction of a 195-foot monopole tower able to accommodate the wireless facilities of four wireless carriers (the "Tower").

27.     Among other things, the Tower is necessary to remedy the significant gap in service currently suffered by Verizon in the area near the Proposed Site, but will also be able to

accommodate the wireless facilities of at least three additional wireless carriers. Verizon has already agreed to be the first tenant on the Tower.  Other potential tenants include AT&T and T-Mobile. Because the Tower can support the wireless facilities of up to four carriers, construction of the Tower could eliminate the need for up to three additional structures in the vicinity of the Proposed Site.

28.     The County's SUP process requires review and recommendation of the P&Z Commission in a public hearing. The P&Z Commission then provides its recommendation to the Board, which also holds a public hearing before a final decision is made by the Board.  The Board must approve and issue an order finding facts and explaining its final determination.

29.     On November 16, 2022, the P&Z Commission held a public hearing to review Horizon's Application. During that hearing, Horizon presented evidence and testimony, in addition to the Application and its supporting materials, demonstrating that the Tower complied with the applicable provisions of the County Code and met all of the approval standards required for a SUP.

30.     After considering Horizon's Application, the P&Z Commission concluded that the Proposed Site and Tower did not meet the applicable approval standards. Accordingly, the P&Z Commission recommended denying Horizon's Application.

31.     The grounds for the P&Z Commission's recommendation were two-fold. Namely, the P&Z Commission asserted that Horizon's application did not adequately demonstrate that the use would be "in harmony and compatible with surrounding land uses and with the neighborhood" and "[would not] create a substantial adverse impact on adjacent properties."

32.     Following the P&Z Commission's submission of its recommendation, the Board held a public hearing on January 24, 2023 to consider Horizon's Application.

33.     During the January 24, 2023 public hearing before the Board, Horizon presented several pieces of evidence and testimony demonstrating that its Application met the applicable approval standards for a SUP and that the Tower complied with all applicable provisions of the County Code.

34.      Among other things, Horizon presented evidence demonstrating that Verizon suffers from a significant gap in wireless service in the area around the Proposed Site, including but not limited to testimony from an RF engineer and supporting RF propagation studies performed by the RF engineer.

35.     Further, Horizon presented evidence demonstrating that it had undertaken a thorough and good-faith investigation of potential alternative properties and locations within the search area defined by Verizon as necessary to remedy the significant gap in service.

36.     Horizon also further demonstrated that there were no existing structures that could be used and no alternative locations within the relevant search ring that were available, feasible under the relevant zoning laws, or a viable remedy for a significant gap in service. Horizon explained that locating the Tower at a higher elevation, as suggested by some residents, would not remedy the significant gap and would instead require additional towers, since the Tower would be located further away from the gap area.

37.     Horizon presented evidence demonstrating that the Proposed Site and Tower are harmonious and compatible with the surrounding land uses. Horizon demonstrated that the adjacent and surrounding land uses included a small number of residential properties but mostly vacant lots, public or utility access roads, State Highway 14-16-20, a gas station, and an RV park.

38.     Further, Horizon demonstrated that the Tower would cause no substantial adverse impact on adjacent property. Horizon showed that the areas around the Tower were predominantly vacant parcels, public roads, other property owned by Ms. Young, or property already being used for telecommunications purposes.

39.     Some local residents opposed to the Application ("Opponents") submitted comments via e-mail and presented to the Board at the January 24, 2023 hearing. The Opponents' comments were vague and generalized concerns regarding the property values of surrounding lands, the obstruction of certain views and aesthetic concerns, and fears of alleged potential health effects of RF emissions from the Tower.

40.     The Opponents provided no evidence that the Tower would reduce any area property value.

41.     The Opponents provided no evidence that the Tower's RF emissions would not comply with Federal Communications Commission ("FCC") regulations concerning RF emissions.

42.     Ultimately, the Opponents' comments and testimony were generalized opposition to the construction of any wireless facility in the area of the Proposed Site.

43.     Horizon presented rebuttal evidence and testimony addressing the Opponents' concerns. Horizon demonstrated that the evidence did not support the Opponents' concerns regarding potential adverse impacts.

44.     Horizon demonstrated, again, that there was a gap in Verizon's wireless coverage and detailed the flaws in the Opponents' claims that there was no service gap.

45.     Horizon also demonstrated that the Tower's visual impact would be mitigated by its less obtrusive design as a monopole tower rather than a "lattice tower" as originally

considered. Further, Horizon demonstrated that there were no lighting concerns as the Tower would be covered in an anti-glare finish and would not require any tower lighting.

46.     Horizon addressed concerns about property values, demonstrating with extensive evidence that communications facilities have little to no adverse effect on the property values of area homes.

47.     After the presentations, but before the close of the January 24 hearing, rather than vote on the Application, the Board decided to continue the hearing to February 7, 2023, to receive additional information and for further consideration.

48.     At the continued hearing on February 7, 2023, Horizon again provided evidence and testimony addressing the Opponents' concerns. Horizon also responded to questions from the Board's commissioners.

49.     At the close of the February 7 Hearing, the Board voted unanimously to deny Horizon's Application. However, the Board did not adopt or issue a written order or its factual findings until February 16, 2023.

50.     On February 16, 2023, the Board approved its written findings and issued its Order denying Horizon's Application ("Denial"). Despite not being finalized or approved by the Board until February 16, 2023, the Denial was backdated to February 7, 2023, without any explanation.

51.     The Denial was the final action of the County on Horizon's Application.

52.     The Denial did not explain its decision denying Horizon's Application, asserting in a conclusory manner only that "the proposed communication tower and corresponding facility would not be in harmony with the neighborhood; and there is a high likelihood that the proposed

communication tower and corresponding facility would have a significant adverse impact on the neighborhood."

53.     Although the Denial summarizes arguments made by Opponents, those arguments are not supported by substantial evidence in the record.

54.     The Denial prohibits the provision of personal wireless services to individuals who live, work, commute, and otherwise travel through the area surrounding the Proposed Site.

55.     Pursuant to 47 U.S.C. § 332(c)(7)(B)(v), "[a]ny person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis."

56.     This action is timely filed because it was filed within thirty days after the Board's February 16 Denial – the County's final action related to Horizon's Application.

## COUNT I
### (Violation of 47 U.S.C. § 332(c)(7)(B)(i)(II) –
### Effective Prohibition of Personal Wireless Services)

57.     Plaintiffs incorporate by reference and reallege the foregoing factual allegations in Paragraphs 1 through 56 as if fully set forth herein.

58.     Pursuant to 47 U.S.C. § 332(c)(7)(B)(i)(II), "[t]he regulation of the placement, construction, and modification of personal wireless service facilities by any . . . local government thereof . . . shall not have the effect of prohibiting the provision of personal wireless services."

59.     In *In the Matter of Acceleration of Broadband Deployment by Removing Barrier to Infrastructure Investment,* Declaratory Ruling and Third Report and Order, 33 FCC Rcd. 9088, 2018 WL 4678555 (2018) (Sept. 27, 2018) (the "*FCC 2018 Order*"), the FCC issued a

declaratory ruling that definitively interpreted the "effective prohibition" language of Section 332(c)(7)(B)(i)(II). The FCC declared that the standards adopted by various Circuit Courts and other courts applying Section 332(c)(7)(B)(i)(II) were incorrect. *Id.* n.94. Instead, the FCC declared that "an effective prohibition [of service] occurs where a state or local legal requirement materially inhibits a provider's ability to engage in any of a variety of activities related to its provision of a covered service." *Id.* ¶ 37. The FCC made clear that a locality effectively prohibits the provision of wireless services if it inhibits or limits a wireless service provider "not only when filling a coverage gap but also when densifying a wireless network, introducing new services or otherwise improving service capabilities." *Id.* The FCC also made clear that an effective prohibition includes inhibiting a provider from deploying the "performance characteristics" of its choosing. *Id.* n.86. The *FCC 2018 Order* also declares that local governments cannot deny an application for a wireless site based on the alleged existence of alternative locations.

60.     The *FCC 2018 Order* was affirmed on appeal by the Ninth Circuit in *City of Portland v. U.S.*, 969 F.3d 1020 (9th Cir. 2020), *cert. denied*, 141 S.Ct. 2855 (2021).

61.     The *FCC 2018 Order* is currently in effect and governs Horizon's claim under 47 U.S.C. § 332(c)(7)(B)(i)(II).

62.     Applying the *FCC 2018 Order* to this case, Verizon identified an area in which Verizon needs to install a wireless facility to provide coverage, network capacity, and ultimately provide service. The County's denial of Horizon's Application materially inhibits or limits Verizon's ability to install facilities and provide wireless service at the level Verizon determines appropriate. Accordingly, the County's denial of Horizon's Application effectively prohibits the provision of personal wireless services, in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II).

63.     In addition, or in the alternative, even following the standard for claims under Section 332(c)(7)(B)(i)(II) previously adopted by the Tenth Circuit, the County's denial of Horizon's Application effectively prohibits the provision of personal wireless service in violation of Section 332(c)(7)(B)(i)(II).

64.     In *AT&T Mobility Servs., LLC v. Vill. of Corrales*, prior to the *FCC 2018 Order*, the Tenth Circuit explained that a wireless provider could prevail on an effective-prohibition claim by "showing that (1) the denial of a permit prevented AT & T from closing a 'significant gap' in existing services and (2) its Tower was the least intrusive means of doing so," 642 F. App'x 886, 889 (10th Cir. 2016). A significant gap can include both in-building and in-vehicle gaps in service. *Id.* at 889-90. This is particularly important given the Proposed Site's proximity to State Highway 14-16-20.

65.     Applying the pre-*FCC 2018 Order* standard, Verizon has a significant gap in personal wireless service in the area surrounding the Proposed Site.

66.     Horizon provided the Commission and Board with evidence from RF experts demonstrating that Verizon has a significant gap in reliable personal wireless service around the Proposed Site.

67.     Horizon undertook a good faith and thorough investigation of potential alternative sites in and around the area of the Proposed Site within which Verizon determined that a significant gap exists and that a wireless telecommunications facility must be located to fill the significant gap and function effectively within Verizon's network of existing facilities. Within the relevant search area, there are no existing structures of sufficient height or of a type or design on which a wireless facility could be installed to cure Verizon's significant gap in wireless

service, and no less intrusive sites are feasible or practically available to remedy the significant gap in Verizon's service.

68.     Horizon investigated at least 13 other potential locations but found no viable alternatives to the Proposed Site that would have closed the significant gap in Verizon's service.

69.     The Proposed Site and Horizon's design of the Tower provide the least intrusive means by which to fill the significant gap in Verizon's personal wireless service.

70.     The proposed Tower design includes features to mitigate the Tower's impact on the surrounding area. Specifically, Horizon amended its proposal so that the Tower would be a monopole tower rather than the more obtrusive lattice style, the Tower would be coated in an anti-glare coating, and the Tower would not include any lighting.

71.     Thus, the County's denial of Horizon's Application effectively prohibits the provision of personal wireless service in violation of, and is preempted by, Section 332(c)(7)(B)(i)(II) of the Communications Act, and should be set aside and enjoined by the Court on that basis. Further, this Court should exercise its power to issue an order commanding the County to approve Horizon's Special Use Permit Application and all related permits.

## <u>COUNT II</u>
### (Violation of 47 U.S.C. § 332(c)(7)(B)(iii) – Lack of Substantial Evidence)

72.     Plaintiffs incorporate by reference and reallege the foregoing factual allegations in Paragraphs 1 through 71 as if fully set forth herein.

73.     Pursuant to 47 U.S.C. § 332(c)(7)(B)(iii), "[a]ny decision by a . . . local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be . . . supported by substantial evidence contained in a written record."

74.     Under Tenth Circuit law, "[s]ubstantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decisionmaker." *T-Mobile Cent., LLC v. Unified Gov't of Wyandotte Cnty., Kansas City, Kan.*, 546 F.3d 1299, 1307 (10th Cir. 2008). While "[t]he possibility of drawing two competing conclusions from the evidence does not prevent a finding of substantial evidence . . . if the record as a whole contains conflicting evidence, the fact-finder must adequately explain its reasons for rejecting or discrediting competent evidence." *Id.*

75.     Horizon presented to both the Commission and Board comprehensive and largely uncontroverted evidence that the Proposed Site and Tower comply with the County Code's required findings for approval of an SUP.

76.     As demonstrated above, Horizon's Application with respect to constructing the Tower at the Proposed Site satisfied all of the criteria set forth in the County Code.

77.     Among other things, Horizon submitted evidence demonstrating that the Tower satisfied the requirements in the County Code for approval of a SUP, including but not limited to that the Tower would be compatible and in harmony with the surrounding land uses and would not create substantial adverse impacts on adjacent properties.

78.     The County's Denial was not supported by substantial evidence in the record.

79.     Opponents of Horizon's application did not submit evidence disputing the evidence submitted by Horizon.

80.     There is no evidence demonstrating that the Proposed Site would negatively affect property values in the surrounding area.

81.     No evidence in the record demonstrates that the RF emissions from the Tower would violate FCC regulations regarding such emissions.

82.     The Board's decision ignores the evidence presented by Horizon and provides no explanation for its findings and conclusion that the Tower's construction at the Proposed Site would be incompatible and not in harmony with surrounding land uses or is likely to have a significant adverse impact on adjacent properties, other than conclusory, generalized opposition to wireless facilities.

83.     Consequently, the County's decision is not supported by substantial evidence in the record, and violates, and is preempted by, Section 332(c)(7)(B)(iii) of the Communications Act and should be set aside and enjoined by the Court on that basis. Further, this Court should exercise its power to issue an order commanding the Defendants to approve Horizon's Special Use Permit Application.

**WHEREFORE,** Plaintiffs demand judgment against the Defendants as follows:

1.     An expedited review of the matters set forth in this Complaint pursuant to 47 U.S.C. § 332(c)(7)(B)(v);

2.     A judgment that the Defendants' Denial, actions and decisions have the effect of prohibiting the provision of personal wireless service, in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II);

3.     A judgment that the Defendants' Denial, actions and decisions are not supported by substantial evidence in the written record, in violation of 47 U.S.C. § 332(c)(7)(B)(iii);

6.     A judgment that the Defendants' Denial, actions and decisions violate and are preempted by the Communications Act and are therefore void and invalid;

8.     An order requiring the Defendants to grant the Application and thereby approve the Tower;

9.      An order directing the Defendants to issue all other approvals and permits

necessary for the construction of the Tower;

10.     An award of Plaintiffs' costs, including reasonable attorneys' fees; and

11.     Such other and further relief as the Court may deem just and proper.

DATED:  March 9, 2023.

/s/ Isaac N. Sutphin
Isaac N. Sutphin, P.C. (Wyo. State Bar # 6-3711)
Andrea N. Grave (Wyo. State Bar # 8-6702)
HOLLAND & HART LLP
2515 Warren Avenue, Suite 450
P.O. Box 1347
Cheyenne, WY 82003
Telephone: (307) 778-4200
insutphin@hollandhart.com
angrave@hollandhart.com

T. Scott Thompson (*pro hac vice* forthcoming)
Jonathan P. Garvin (*pro hac vice* forthcoming)
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
555 12th Street NW, Suite 100
Washington, DC 20004
Telephone: (202) 434-7440
SThompson@mintz.com
JPGarvin@mintz.com

ATTORNEYS FOR PLAINTIFFS
HORIZON TOWER LIMITED, LLC
and HORIZON TOWER, LLC.