Isaac N. Sutphin, P.C. (Wyo. State Bar # 6-3711)
Andrea N. Grave (Wyo. State Bar # 8-6702)
HOLLAND & HART LLP
2020 Carey Avenue, Suite 800
P.O. Box 1347
Cheyenne, WY  82003-1347
Telephone: (307) 778-4200
insutphin@hollandhart.com
angrave@hollandhart.com

Scott Thompson (Admitted *pro hac vice*)
Jonathan P. Garvin (Admitted *pro hac vice*)
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
555 12th Street NW, Suite 1100
Washington, DC 20004
Telephone: (202) 434-7440
SThompson@mintz.com
JPGarvin@mintz.com
ATTORNEYS FOR PLAINTIFFS
HORIZON TOWER LIMITED, LLC
and HORIZON TOWER, LLC

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| HORIZON TOWER LIMITED, LLC and HORIZON TOWER, LLC,<br><br>          Plaintiffs,<br><br>  v.<br><br>PARK COUNTY, WYOMING; BOARD OF COUNTY COMMISSIONERS OF PARK COUNTY, WYOMING; DOSSIE OVERFIELD, LLOYD THIEL, LEE LIVINGSTON, SCOTT MANGOLD, and SCOTT STEWARD, in their official capacity as Members of the Board of County Commissioners for Park County, Wyoming;<br><br>          Defendants | Civil Action No.:  Case No.  23-CV-0037-ABJ |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................1

II.   SUMMARY OF UNDISPUTED MATERIAL FACTS.....................................3

III.  THE COUNTY'S DENIAL HAS THE EFFECT OF PROHIBITING
      PERSONAL WIRELESS SERVICE.................................................................5

      A.    Summary Judgment Standard of Review................................................5

      B.    The Applicable Standard For Evaluating An "Effective Prohibition" Claim
            Under Section 332(c)(7)(B)(i)(II).........................................................6

      C.    The Denial Violates the Material Inhibition Standard............................9

      D.    The Denial Violates Section 332 Even Under the Pre-*FCC 2018 Order*
            Effective Prohibition Standard.............................................................10

            1.    There is No Dispute That there is a Significant Gap in Wireless Service. 11

            2.    The Proposed Facility Is The Least Intrusive Means of Remedying The
                  Significant Coverage Gap .........................................................11

                  a.    Horizon's Good Faith Evaluation of Potential Alternatives .........12

            3.    The County Has Not Identified Any Less Intrusive Alternative ..............14

                  a.    The County Claims It Cannot Identify Any Less Intrusive
                        Alternative.........................................................................15

                  b.    The County's Alleged Experts Do Not Identify Feasible, Less
                        Intrusive Alternatives..........................................................16

                        (1)    Mr. Clarkson's Locations Are Speculative and Not
                               Feasible ................................................................16

                        (2)    Mr. Afflerbach's "Small Cell" Proposal Is Not Less
                               Intrusive ...............................................................18

IV.   THE COUNTY'S DENIAL IS NOT SUPPORTED BY SUBSTANTIAL
      EVIDENCE IN THE WRITTEN RECORD ...................................................20

      A.    Relevant Standards For Evaluating Substantial Evidence ...................20

      B.    Generalized Opposition To Wireless Is Not Substantial Evidence That The
            Proposed Tower Would Not Be In Harmony And Compatible With
            Surrounding Land Uses........................................................................21

      C.    There Is Not Substantial Evidence To Support The Assertion Of Likely
            Significant Adverse Impact..................................................................24

V.    AN ORDER REQUIRING THE COUNTY TO APPROVE THE SUP IS THE
      ONLY APPROPRIATE REMEDY .................................................................25

VI.   CONCLUSION...............................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Towers, Inc. v. Wilson Cty.*,
2014 U.S. Dist. Lexis 131 (M.D. Tenn. Jan. 2, 2014) ...........................................................12

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)..........................................................................................................5, 6

*AT&T Mobility Servs., LLC v. Vill. of Corrales*,
642 F. App'x 886 (10th Cir. 2016)................................................................................ *passim*

*AT&T Wireless Servs. of Cal. LLC v. City of Carlsbad*,
308 F. Supp. 2d 1148 (S.D. Cal. 2003)...........................................................................6, 12

*Branch Towers, LLC v. City of Knoxville*,
2016 U.S. Dist. LEXIS 89338 (E.D. Tenn. July 11, 2016)...............................................11, 17

*Breen v. Black*,
709 F. App'x 512 (10th Cir. 2017)........................................................................................6

*C.E. Design, Ltd. v. Prism Bus. Media, Inc.*,
606 F.3d 443 (7th Cir. 2010) .................................................................................................9

*Cellco P'ship v. Franklin Cty.*,
553 F. Supp. 2d 838 (E.D. Ky. 2008) ...................................................................................21

*Cellco P'ship v. White Deer Township Zoning Hearing Board*,
74 F.4th 96 (3rd Cir. 2023) ........................................................................................8, 9, 10

*Cellular S. Real Estate, Inc. v. City of Germantown*,
2015 U.S. Dist. Lexis 80416 (W.D. Tenn. June 22, 2015)....................................................21

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986).................................................................................................................5

*City of Portland v. United States*.
969 F.3d 1020 (9th Cir. 2020) .................................................................................................8

*City of Rancho Palos Verdes v. Abrams*,
544 U.S. 113 (2005)............................................................................................................6, 25

*Eco-Site LLC v. Cty. of Pueblo*,
2020 U.S. Dist. Lexis 111855 (D. Colo. June 25, 2020) ................................................ *passim*

*Green Mt. Realty Corp. v. Leonard*,
  750 F.3d 30 (1st Cir. 2014) ............................................................................................9

*Leyse v. Clear Channel Broad.*,
  545 F. App'x 444 (6th Cir 2013) ....................................................................................9

*Mais v. Gulf Coast Collection Bureau, Inc.*,
  768 F.3d 1110 (11th Cir. 2014) ......................................................................................9

*MetroPCS, Inc. v. City & Cty. of San Francisco*,
  400 F.3d 715 (9th Cir. 2005) ...................................................................................10, 15

*Nack v. Walburg*,
  715 F.3d 680 (8th Cir. 2013) ..........................................................................................9

*Nat'l Tower, LLC v. Plainville Zoning Bd. Of Appeals*,
  297 F.3d 14 (1st Cir. 2002) .............................................................................................6

*Qwest Corp. v. City of Santa Fe*,
  380 F.3d 1258 (10th Cir. 2004) ......................................................................................8

*Second Generation Props., L.P. v. Town of Pelham*,
  313 F.3d 620 (1st Cir. 2002) ...........................................................................................9

*T-Mobile Cent., LLC v. Charter Twp. of W. Bloomfield*,
  691 F.3d 794 (6th Cir. 2012) ................................................................................. *passim*

*T-Mobile Cent., LLC v. City of Fraser*,
  675 F. Supp. 2d 721 (E.D. Mich. 2009) ........................................................................20

*T-Mobile Cent., LLC v. Wyandotte Cty.*,
  528 F. Supp. 2d 1128 (D. Kan. 2007) ...........................................................................20

*T-Mobile Ne., LLC v. Borough of Leonia Zoning Bd. of Adjustment*,
  942 F. Supp. 2d 474 (D.N.J. 2013) ...............................................................................11

*T-Mobile Ne. LLC v. Inc. Vill. of E. Hills*,
  779 F. Supp. 2d 256 (E.D.N.Y.2011) ............................................................................25

*T-Mobile S. LLC v. City of Margate*,
  2011 U.S. Dist. Lexis 36392 (S.D. Fla. Apr. 4, 2011) ..................................................21

*T-Mobile S., LLC v. City of Roswell*,
  574 U.S. 293 (2015) ...................................................................................................6, 21

*T-Mobile USA, Inc. v. City of Anacortes*,
  572 F.3d 987 (9th Cir. 2009) .......................................................................7, 11, 17, 18

*T-Mobile W. LLC v. City of Huntington Beach*,
  2012 U.S. Dist. Lexis 148170 (C.D. Cal. Oct. 10, 2012) .......................................................12

**Statutes**

28 U.S.C. 2342(1) ...........................................................................................................................9

47 U.S.C. § 332(c)(7) ......................................................................................................................6

47 U.S.C. § 332(c)(7)(B) .............................................................................................................1, 6

47 U.S.C. § 332(c)(7)(B)(i)(II) .............................................................................................. *passim*

47 U.S.C. § 332(c)(7)(B)(iii) .................................................................................................. *passim*

**Other Authorities**

*Accelerating Wireless Broadband Deployment by Removing Barriers to
  Infrastructure Investment*,
  33 FCC Rcd 9088 (2018) ..........................................................................................................7, 8

47 C.F.R. §§ 17.21, 17.7 ...............................................................................................................14

County Regs. § 2(8) ......................................................................................................................24

County Regs. § 4(d)(3) ............................................................................................................21, 24

Fed. R. Civ. P. 56(c) .......................................................................................................................5

Pursuant to Fed. R. Civ. P. 56, Local Rules 7.1 and 56.1, and the Court's Order on Initial Pretrial Conference, Plaintiffs Horizon Tower Limited, LLC and Horizon Tower, LLC (collectively, "Horizon"), respectfully submit this Memorandum of Law in Support of their Motion for Summary Judgment.

## I.      INTRODUCTION

This case involves Defendants Park County, Wyoming; Board of County Commissioners of Park County, Wyoming; Dossie Overfield, Lloyd Thiel, Lee Livingston, Scott Mangold, and Scott Steward, in their official capacity as Members of the Board of County Commissioners for Park County, Wyoming (collectively the "County") denial of Horizon's application for a special use permit ("SUP") to construct a wireless telecommunications facility in the Wapiti Valley area of Park County ("Denial").

Put plainly, this case involves an enormous area in which all three major national wireless service providers (Verizon Wireless, AT&T, and T-Mobile) suffer from a gap in wireless signal and service.  That area, although rural, is home to a growing population and has a highway that is the artery for vehicle traffic in and out of the East Entrance of Yellowstone National Park—hundreds of thousands of vehicles per year.  There is no dispute that this massive service gap exists.  But Horizon's application to install a wireless facility that would address the gap in service was denied by the County in response to local resident opposition to not only the proposed tower but any wireless facilities.

Congress recognized this type of parochial opposition to the deployment of personal wireless services threatened the national deployment of wireless service, and, therefore, in Section 332(c)(7)(B) of the Communications Act, 47 U.S.C. § 332(c)(7)(B), prohibited local governments from denying wireless facility applications when it would effectively prohibit the provision of wireless services or when the denial is not supported by substantial evidence.

The County's Denial has the effect of prohibiting the provision of personal wireless service in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II).  Horizon has submitted expert technical testimony showing that Verizon Wireless, at a minimum, has a significant gap in reliable personal wireless service in and around the Wapiti Valley, including east and west on Highway 14-16-20.  The County's radiofrequency ("RF") expert agrees.  The undisputed evidence also establishes that Horizon undertook a good-faith evaluation of potential alternative sites in the relevant area in which a tower needs to be located.  The County does not contend that there are any locations or designs for the tower that Horizon should have investigated or considered that Horizon did not.  Indeed, the County does not identify *any* alternative location or design that the County contends would be a less intrusive means of addressing the gap in service.  The County does not even contend that the "alternatives" discussed by its two purported experts are less intrusive means of remedying the gap in service—or even that the County would approve any of them.  Accordingly, under established standards, the County's Denial effectively prohibits Horizon from providing personal wireless service in violation of Section 332(c)(7)(B)(i)(II).

The County's Denial is also not supported by substantial evidence in the written record in violation of 47 U.S.C. § 332(c)(7)(B)(iii).  Contrary to the County's Denial, Horizon's evidence presented at public hearings before the Planning and Zoning Commission ("P&Z Commission") and the County Board ("Board") demonstrated that the proposed tower would be harmonious with the surrounding land uses.  Horizon also presented supported and credible evidence showing that a wireless communications facility at the Proposed Site would not have an injurious effect on the property values of the area neighborhoods.  The generalized, speculative opposition of residents, in contrast, was not supported by any evidence and does not satisfy the standards of the County's own regulations or for finding substantial evidence under Section 332(c)(7)(B)(iii).

Accordingly, Horizon should be granted summary judgment and the County ordered to grant Horizon's SUP.

## II.     SUMMARY OF UNDISPUTED MATERIAL FACTS

Pursuant to the Court's rules, Horizon has submitted a statement of material facts to which there is no genuine dispute ("SMF"), and it incorporates that submission by reference. However, for the Court's convenience, Horizon briefly summarizes the key facts here.

The Wapiti Valley is both a home to a growing population and a gateway to the eastern entrance to Yellowstone National Park. (SMF ¶¶ 12-13) Critically, Highway 14/16/20 ("Highway 20") runs east and west through Wapiti Valley, and is travelled by an estimated 800,000 vehicles per year, many headed to Yellowstone.  (SMF ¶ 12.)  However, there is a big gap in personal wireless service coverage in the area, including Highway 20 to the east and west. (SMF ¶¶ 9-11, 14, 16-17.)  The closest wireless towers for major national wireless providers Verizon Wireless, AT&T, and T-Mobile are over 16 miles away (21 miles in the case of T-Mobile).  (SMF ¶ 15.)  Accordingly, Verizon Wireless had established a "search ring" that identified an area within which a new wireless tower would need to be built to remedy the gap in coverage and also fit within Verizon's network.  (SMF ¶¶ 18-21.)

In an attempt to address that wireless service need, Horizon's site acquisition specialists performed a search of properties within the search area identified by Verizon Wireless. (SMF ¶¶ 23-24.)  They identified at least 14 parcels within the search area, and even immediately adjacent outside the search area. (SMF ¶ 24.)  However, they discovered that many of the properties were encumbered by deed limitations that prevented a tower from being built on their property. (SMF ¶¶ 25-26.)  At least two property owners in the ring who were not subject to deed encumbrances indicated an interest in possibly having a tower on their property, both having properties on the south side of Highway 20 and on either side of Green Creek Road.  (SMF ¶ 27.)  Horizon

3

ultimately proposed to install a tower on Ms. Young's property at a location at approximately

2944 N. Fork Hwy, Cody, WY, which is a location on Ms. Young's property that is adjacent to

Green Creek Road approximately 1,275 feet south of U.S. Highway 14-16-20 ("Proposed Site");

the Proposed Site is approximately 50 feet higher in elevation than areas on the same property

adjacent to Highway 20.  (SMF ¶¶ 27-32, 35.)  Horizon chose the Proposed Site location because

it allowed the tower to be farther away from the view of visitors on the Highway and also

because a tower close to the Highway would need to be significantly taller due to the lower

elevation.  (SMF ¶ 35.)  Horizon's RF engineering expert determined that the tower at the

Proposed Site would need to be at least 195 feet tall to address Verizon Wireless' service need.

(SMF ¶ 33.)  That height would also allow Horizon to host three additional wireless carriers, thus

eliminating the need for additional towers in the area.  (SMF ¶¶ 18, 44)

Pursuant to the County's zoning regulations, on October 17, 2022, Horizon filed its

application for a Special Use Permit ("SUP").  (SMF ¶ 40.)  The Application was first considered

by the County's P&Z Commission at a hearing on November 16, 2022.  (SMF ¶¶ 46-48.)  At the

hearing, Horizon demonstrated how the proposed tower complied with the County's SUP

requirements, notably how it would be harmonious with surrounding properties and would not

cause significant damage to use of the surrounding properties.  (SMF ¶¶ 49-50, 59.)  The P&Z

Commission, however, heard opposition from residents who expressed opposition to any

wireless facility in the area, with many arguing against change. (SMF ¶¶ 51.)  Despite

recognizing the "not in my backyard" nature of the comments, the P&Z Commission

recommended denial of the Application.  (SMF ¶¶ 52-58, 60-61.)  On January 24, 2023 and

February 7, 2023, the Board held two public hearings on Horizon's Application.  Horizon again

demonstrated how the proposed tower satisfied the standards for an SUP, including evidence that

wireless towers do not diminish property values, and responding to objections asserted by residents. (SMF ¶¶ 62-69 (Jan.), 75-76 (Feb.).) And residents again expressed a generalized opposition to wireless facilities and what they perceived as the modernization of Wapiti Valley. (SMF ¶¶ 70-73 (Jan.), 77-79 (Feb.).) Horizon's representatives, including its RF engineering expert, responded to the arguments advanced by opponents, including explaining why the speculative arguments about moving the tower somewhere else (*i.e.*, not in their "back yard") were not viable. (SMF ¶¶ 80-81.) Nonetheless, at the conclusion of the February 7, 2023 meeting, the Board voted to deny Horizon's Application and subsequently issued a written decision memorializing the denial (the "Denial"). (SMF ¶¶ 82-83.)

In this case, the County has not identified a single location or design that it contends is a less intrusive means of remedying the significant gap in wireless service. (SMF ¶¶ 84-88, 129-48.) Moreover, although the County has designated two purported expert witnesses, the County does not contend that any of the alleged alternatives discussed by either witness is a less intrusive means of remedying the gap in service or that the County would even approve anything discussed by either witness. (SMF ¶¶ 89-104 (Afflerbach alternatives), 105-28 (Clarkson alternatives).)

## III. THE COUNTY'S DENIAL HAS THE EFFECT OF PROHIBITING PERSONAL WIRELESS SERVICE

### A. Summary Judgment Standard of Review

Summary judgment is appropriate where there is "no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). A "genuine" issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Further, "when a properly supported

motion for summary judgment is made, the adverse party must set forth specific facts showing

that there is a genuine issue for trial." *Id.* at 250 (internal quotations omitted).

The material facts upon which this Motion is based are undisputed or cannot be genuinely

disputed, and this case is ripe for adjudication on this motion for summary judgment. *See Breen*

*v. Black*, 709 F. App'x 512, 513 (10th Cir. 2017) (facts set forth by a non-moving party "must not

only be admissible as evidence, but must reveal *a genuine dispute* as to a material fact"

(emphasis added)).  As explained further below, the County does not dispute the operative facts

supporting Horizon's effective prohibition claim.  Horizon's claim that the County's Denial was

not supported by substantial evidence in the written record in violation of Section

332(c)(7)(B)(iii) is "especially amenable" to summary judgment because the claim is limited

solely to the contents of the administrative record.  *AT&T Wireless Servs. of Cal. LLC v. City of*

*Carlsbad*, 308 F. Supp. 2d 1148, 1155 (S.D. Cal. 2003); *Nat'l Tower, LLC v. Plainville Zoning*

*Bd. Of Appeals*, 297 F.3d 14, 22 (1st Cir. 2002).  Finally, each of Horizon's claims alone is

dispositive.  If the Court finds for Horizon on either count, it is entitled to complete relief.

### B.    The Applicable Standard For Evaluating An "Effective Prohibition" Claim Under Section 332(c)(7)(B)(i)(II)

Section 332(c)(7) of the Communications Act, 47 U.S.C. § 332(c)(7), governs state and

local authority over the siting of personal wireless service facilities.  While Section 332(c)(7)(A)

reserves some local control over siting, Section 332(c)(7)(B) sets forth "specific limitations on

the traditional authority" of local governments to regulate the location, construction, and

modification of personal wireless services facilities.  *City of Rancho Palos Verdes v. Abrams*,

544 U.S. 113, 115 (2005); *T-Mobile S., LLC v. City of Roswell*, 574 U.S. 293, 300 (2015)

(quoting *Rancho Palos Verdes*, 544 U.S. at 127).  "Congress saw a national problem, namely, an

'inconsistent and, at times, conflicting patchwork' of state and local siting requirements, which

threatened 'the deployment' of a national wireless communication system." *Rancho Palos Verdes*, 544 U.S. at 127-28 (Breyer, J. concurring) (quoting H. R. Rep. No. 104-204, pt. 1, p. 94 (1995)).

Among the specific, substantive limitations imposed on a local government's review of an application for a wireless facility is Section 332(c)(7)(B)(i)(II), which provides that "[t]he regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof shall not prohibit or have the effect of prohibiting the provision of personal wireless services."  47 U.S.C. § 332(c)(7)(B)(i)(II). Whether the County's Denial has the effect of prohibiting personal wireless service is an issue separate from and unrelated to whether the Denial may have been supported by substantial evidence pursuant to the County's regulations under Section 332(c)(7)(B)(iii).  *See, e.g., T-Mobile USA, Inc. v. City of Anacortes*, 572 F.3d 987, 994, 999 (9th Cir. 2009).  The effective prohibition clause considers the effect of the Denial, and the Court must review and decide this issue *de novo*, with no deference to the County. *AT&T Mobility Servs., LLC v. Vill. of Corrales*, 642 F. App'x 886, 888 (10th Cir. 2016).

Historically, courts in the Tenth Circuit have held that an effective prohibition of service exists if (a) the wireless carrier has a significant gap in service and (b) the proposed facility is the least intrusive means of curing the gap.  *See Id.* at 889.  However, in 2018, the FCC issued a declaratory ruling clarifying the correct standard applicable to effective prohibition of service claims under Section 332(c)(7)(B)(i)(II).  *Accelerating Wireless Broadband Deployment by Removing Barriers to Infrastructure Investment*, 33 FCC Rcd 9088, ¶ 37 (2018) ("*FCC 2018 Order*").  The FCC explained that the two-part test used by courts, such as the Tenth Circuit, was incorrect.  *Id.* at ¶¶ 34-36.  Instead, the FCC explained that "an effective prohibition occurs

7

where a state or local legal requirement *materially inhibits a provider's ability to engage in any of a variety of activities related to its provision of a covered service.*"  *Id.* ¶ 37 (emphasis added).[1]

In so holding, the FCC emphasized that it rejected alternative readings of the effective prohibition language in Section 332 in which some courts had applied a "coverage gap" standard because that approach reflected an "unduly narrow reading of the statute and an outdated view of the marketplace."  *Id* ¶ 40.  Further, the FCC recognized the courts' "coverage gap" approach was inconsistent with the policy goals of the Telecommunications Act of 1996, namely securing higher quality services for American consumers, including the fundamental objective of rapid and efficient wireless deployment. *Id.* ¶ 38.  Thus, the FCC rejected the "coverage gap" approach in favor of the materially inhibits standard because it found that the "coverage gap" approach weighed too heavily in favor of local governments.  *See id*. ¶ 42.

The *FCC 2018 Order* was affirmed on appeal by the Ninth Circuit, and the Supreme Court denied certiorari.  *City of Portland v. United States*. 969 F.3d 1020, 1035 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 2855 (2021).  Most recently, the Third Circuit followed and applied the FCC's "materially inhibit" standard to determine whether a government action effectively prohibits the provision of personal wireless service.  *Cellco P'ship v. White Deer Township Zoning Hearing Board*, 74 F.4th 96, 102 (3rd Cir. 2023).

The *FCC 2018 Order* is in effect and the Court must apply the "materially inhibits"

---

[1] Prior to the *FCC 2018 Order*, the Tenth Circuit had applied the "materially inhibits" standard to "effective prohibition" cases under Section 253(a) of the Communications Act (a parallel provision of the Act). *See Qwest Corp. v. City of Santa Fe,* 380 F.3d 1258, 1270 (10th Cir. 2004).  However, as both the FCC and Third Circuit explained, the *FCC 2018 Order* applies "with equal measure to the effective prohibition standard that appears in both Sections 253(a) and 332(c)(7)."  *FCC 2018 Order* ¶ 36.

standard articulated by the *FCC 2018 Order*.[2]

### C. The Denial Violates the Material Inhibition Standard

Although the FCC's Order does not require the demonstration of a significant gap in wireless service, there is no dispute in this case that there is an extremely large area in which Verizon Wireless, and other wireless carriers, lack sufficient wireless signal to provide service in vehicles or in buildings.  (SMF ¶¶ 4-10.)  Horizon's expert, Mr. Kennedy,[3] defined the gap area as covering approximately 72 square miles in the Wapiti Valley and to the east and west along Highway 20.  (SMF ¶ 11-12, (Kennedy Rpt. ¶ 13, Ex. A1).)  The County's expert, Mr. Afflerbach, agreed with Mr. Kennedy's assessment, candidly saying that it is "big" and "a lot of gap." (SMF ¶¶ 16-17 (Afflerbach Rpt. ¶¶ 17, 22; Afflerbach Dep. at 27:18, 29:6).) The number of residents in the area and the hundreds of thousands of cars that travel through the area qualify the gap as "significant" even under pre-2018 cases.  (SMF ¶¶ 12-14.)

The County's Denial materially inhibits the provision of personal wireless service in light of the totality of the circumstances. *See White Deer Township*, 74 F.4th at 104-5.  Preventing Verizon, and other providers, from filling the "big" gap in wireless service materially inhibits the provision of personal wireless service.

The County's refusal to address how to remedy the gap in service serves to emphasize the

---

[2] The Hobbs Act vests the federal Circuit Courts of Appeal with exclusive jurisdiction to determine the validity of an FCC decision.  *See* 28 U.S.C. 2342(1).  Accordingly, district courts must follow the FCC's Order.  *See Chavez v. Advantage* Group, 959 F. Supp.2d 1279, 1281 (D. Colo. 2013); *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1120-21 (11th Cir. 2014); *Nack v. Walburg*, 715 F.3d 680, 686 (8th Cir. 2013); *Leyse v. Clear Channel Broad.*, 545 F. App'x 444, 459 (6th Cir 2013); *C.E. Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 445-50 (7th Cir. 2010).

[3] Although the "substantial evidence" claim is limited to the administrative record, evidence from outside the record is admissible to demonstrate an effective prohibition. *See Green Mt. Realty Corp. v. Leonard*, 750 F.3d 30, 39 (1st Cir. 2014); *see also Second Generation Props., L.P. v. Town of Pelham*, 313 F.3d 620, 629 (1st Cir. 2002).

effective prohibition of service.  In response to interrogatories and Rule 30(b)(6) deposition questions from Horizon, the County made clear that it does not and will not identify *any* alternative that it contends would be a less intrusive or acceptable means of remedying the gap in service.  (SMF ¶¶ 84-87.)  Instead, the County takes the position that the burden is solely on Horizon to identify a different potential alternative, file a full SUP application, and only then would Horizon (or even the County) know whether any specific proposed alternative is acceptable.  (SMF ¶¶ 88, 101-04, 116, 129-48)  And if the application were denied, Horizon would have to try again.

Even under the pre-2018 standard, courts had rejected this type of argument that applicants must go through seriatim applications and denials. *MetroPCS, Inc. v. City & Cty. of San Francisco*, 400 F.3d 715, 734 (9th Cir. 2005).  Expecting applicants to undertake the costly exercise of repeated applications, each that the County may deny in response to the same not-in-my-backyard opposition to wireless seen in this case, is a material inhibition on the provision of wireless service.  In *White Deer Township*, State law imposed limitations on the potential alternatives available, and the local government argued that there was no effective prohibition because the applicant did not pursue litigation to challenge the Pennsylvania law.  74 F.4th at 105.  The Third Circuit correctly recognized that Section 332(c)(7)(B)(i)(II) does not require applicants to undertake costly, time-consuming, and ultimately speculative steps to attempt to rule out all possible alternatives.  *Id.* at 106.  The County's position in this case should likewise be rejected.

### D.  The Denial Violates Section 332 Even Under the Pre-*FCC 2018 Order* Effective Prohibition Standard.

Even under the "effective prohibition" test used prior to the *FCC 2018 Order*, Horizon still prevails.  Under the previous test, a provider faced an effective prohibition when (1) a denial

prevented a provider from closing a "significant gap" in existing services and (2) its proposed facility was the least intrusive means of doing so. *Corrales*, 642 F. App'x at 889.

### 1. There is No Dispute That there is a Significant Gap in Wireless Service.

As noted above, there is no dispute in this case that Verizon has a significant gap in its service coverage. Horizon's expert has also demonstrated that AT&T and T-Mobile have a similar gap in coverage, and the County's expert concurs with and does not introduce any evidence to contradict that conclusion. (SMF ¶¶ 4-17.) The gap is significant in light of both the population in Wapiti Valley and the enormous vehicle traffic on Highway 20. (SMF ¶¶ 12-14.)

### 2. The Proposed Facility Is The Least Intrusive Means of Remedying The Significant Coverage Gap

Under the "least intrusive means" standard, a provider must show that its proposed facility is the least means of remedying the gap. *Corrales*, 642 F.'App'x at 889. This standard is met with a showing that a good faith effort has been made to identify and evaluate less intrusive alternatives. *Anacortes*, 572 F.3d at 996; *see also Corrales*, 642 F.App'x at 890-91 (following Ninth Circuit standard). The test does not require Horizon to demonstrate there is no other feasible alternative: "[t]he least intrusive means test does not require elimination of all theoretically possible alternatives. . . ." *T-Mobile Ne., LLC v. Borough of Leonia Zoning Bd. of Adjustment*, 942 F. Supp. 2d 474, 483 (D.N.J. 2013) (internal quotations omitted).

Once Horizon demonstrates that it investigated other sites and designs, the County has the burden to demonstrate that technically feasible and actually available alternatives exist. *Anacortes*, 572 F.3d at 996-98. However, "speculative and unsupported assertion[s]" by the locality are insufficient to refute a plaintiff's "showing that there are no less intrusive alternatives to the proposed facility." *Branch Towers, LLC v. City of Knoxville*, 2016 U.S. Dist. LEXIS 89338, at *28 (E.D. Tenn. July 11, 2016). "A speculative alternative is not a viable alternative,"

*Eco-Site LLC v. Cty. of Pueblo*, 2020 U.S. Dist. Lexis 111855 at *13 (D. Colo. June 25, 2020), and "[m]erely flagging an apparently unviable alternative does not create an issue of fact," *Am. Towers, Inc. v. Wilson Cty.*, 2014 U.S. Dist. Lexis 131 at *34 (M.D. Tenn. Jan. 2, 2014).

Most notably, the local government must show that it would definitively grant permits for any locations or designs it claims demonstrate less intrusive alternatives. *See, e.g, Eco-Site*, 2020 U.S. Dist. Lexis 111855 at *13 (rejecting alleged alternatives where the County did not show "that the County would definitely grant permits for all three sites").

### a.     Horizon's Good Faith Evaluation of Potential Alternatives

Horizon thoroughly investigated the possibility of alternative sites, including at least 13 other potential properties within and immediately outside the search ring established by Verizon Wireless.  (SMF ¶¶ 19-21, 23-27, 38 (Neace Decl. ¶¶ 3-5, 6-11, 18).)  A "search ring" or "search area" is an area defined by the wireless service provider within which a new facility would need to be located to remedy the gap in service and properly fit within the carrier's existing network of wireless sites.  *See, e.g., Eco*-Site, 2020 U.S. Dist. Lexis 111855 at *11 n.5; *City of Carlsbad*, 308 F. Supp.2d 1148, 1157 n.23 (S.D. Cal. 2003) ("A 'search ring' is the area mapped out by the wireless phone service provider within which the provider has determined a wireless site is needed to provide cell phone service or 'coverage.'"); *T-Mobile West LLC v. City of Huntington Beach*, 2012 U.S. Dist. Lexis 148170 at *13 (C.D. Cal. Oct. 10, 2012).  Locations outside the search ring are not viable locations, with minor exceptions.  *Id.*; SMF ¶¶ 4-8 (Kennedy Decl. ¶¶ 4-5; Kennedy Rpt. ¶¶ 13, 18).  In addition to being within the search ring (so as to be viable for RF purposes), to be viable, a location must also satisfy several critical criteria, including: comply with local zoning requirements, be accessible via public roads, be served by electric power and fiber optic lines, have a landlord willing to enter into a lease, and, importantly, be buildable (*i.e.*, have flat ground with soil capable of supporting the foundation).  (SMF ¶ 22 (Mathisen Decl. ¶

12

6).)

Horizon's site acquisition specialists searched for potentially feasible properties within the search ring, and slightly outside the ring.  (SMF ¶¶ 23-24.)  Horizon's site acquisition agents contacted landowners in the search ring; one landowner, Ms. Reyna Worthem, responded to Horizon expressing interest.   (SMF ¶ 25.)  However, after communicating with Ms. Worthem, Horizon learned that her parcel's deed was subject to covenants, conditions and restrictions ("CCR") that prohibited commercial uses, which effectively prohibited the placement and operation of a wireless tower.  *Id.*  Indeed, only four of the thirteen parcels were *not* located within the Green Creek subdivision, and all the parcels in the subdivision were subject to the same CCR restriction.  (SMF ¶ 26.)

Two property owners within the search area were potentially willing to allow Horizon to install a tower on their property.  One was Ms. Tamara Young, who owns a 29.94-acre parcel, zoned General Rural, located on the east side of Green Creek Road and the south side of Highway 20.  (SMF ¶ 27.)  The second was the owner of the "Red Barn Store," a gas station and convenience store that is located on Highway 20 on the west side of the intersection of Green Creek Road and Highway 20.  *Id.*

Horizon determined that due to the size of Ms. Young's property, Horizon would be able to locate a tower further removed from Highway 20, as opposed to the Red Barn Store property, which would require placing the tower closer to Highway 20.  (SMF ¶¶ 28-30.)   It was determined by Horizon's RF engineer that to address Verizon's service need, the tower at the Proposed Site would need to be 195 feet tall.  (SMF ¶¶ 32-33.)  Surrounding the Proposed Site is an approximately .2-acre Mountain States Telephone parcel with a 15 to 20-foot tower, dish and utility building.  (SMF ¶¶ 31 (P&Z Tr. at 6:15-19).)  Residential agricultural uses border the

north along with a campground and two small exempt parcels owned by the Wyoming Transportation Commission, and the Red Barn gas station is adjacent on the west.  (SMF ¶ 31 (*Id.* at 6:20-25).)  Residential and *vacant* lands border the east side of the parcel.  (SMF ¶ 31.)

Horizon also evaluated a location on Ms. Young's parcel farther to the north, adjacent to Highway 20—essentially across Green Creek Road from the Red Barn Store.  (SMF ¶ 35.) However, that location is approximately 50 feet lower in elevation, and as a result a tower at that location would need to be 250 feet tall to achieve the coverage of the 195-foot tower at the Proposed Site.  *Id.*  Like the idea of installing a tower at the Red Barn Store, installing a 250-foot tall tower close to Highway 20 would be more intrusive than a 195-foot tower located 1,275 feet away from Highway 20 at the Proposed Site.  *Id.*

Further, the proposed tower was designed to be as unobtrusive as possible.  Horizon chose the less visually intrusive "monopole" design, with a single, central pole, rather than a "lattice tower," which has multiple legs and its generally considered more visually intrusive. (SMF ¶ 34.)  In addition, the tower would be painted with a gray, anti-glare finish.  (SMF ¶ 45.) And finally, the tower was limited to 195 feet such that it would not require lighting per FAA rules.  (SMF ¶ 36); 47 C.F.R. §§ 17.21, 17.7.

The County admits that Horizon performed a thorough, good-faith investigation because the County does not contend that there are any locations or designs for the Tower that Horizon should have investigated or considered that Horizon did not.  (SMF ¶ 129 (Hill Dep. at 71:18-22).)  Accordingly, Horizon has met its burden by demonstrating that it investigated other potentially feasible alternatives.  *See Corrales* 642 F.App'x at 890.

### 3.    The County Has Not Identified Any Less Intrusive Alternative

The County has not identified **any** alternative that the County contends is a less intrusive means of remedying the gap.  (SMF ¶¶ 103, 116-17, 129-148.)  Among other things, the County

does not contend that there is any height at which a tower at the Proposed Site could be constructed that the County would consider less intrusive. (SMF ¶¶ 145-147 (Hill Dep. at 97:2-17).) The County also does not contend that a tower installed somewhere in Wapiti Valley outside of the search area used by Horizon would be a less intrusive alternative. (SMF ¶ 131, 148 (Hill Dep. at 108:16-21).) As discussed below, although it identified two potential experts, the County does not even contend that any of the locations or designs they suggest are less intrusive alternatives or that the County would even approve them. (SMF ¶¶ 103, 116-17.)

### a. The County Claims It Cannot Identify Any Less Intrusive Alternative

The County has staked out the extreme position that it cannot and will not identify *any* allegedly less intrusive alternative; instead, the County claims that Horizon must file application-after-application to determine whether any location or proposal might be approved. (SMF ¶¶ 87-88, 96, 141 (Hill Dep. at 32:10-16, 34:11-18; 35:9-24; 36:5-23; 38:4-7). The County's assertion means that summary judgment must be granted to Horizon.

Courts have rejected arguments, like the County's, that a company must engage in seriatim applications and denials with the local government never identifying allegedly less intrusive alternatives. In *MetroPCS*, 400 F.3d at 734, the Ninth Circuit adopted the least intrusive means standard (subsequently followed by the Tenth Circuit in *Corrales*), and in so doing rejected a standard that would "require providers to endure repeated denials by local authorities until only one feasible alternative remained." In *Corrales*, the local government argued that the wireless carrier failed to show that it considered lower tower heights, but the Tenth Circuit rejected that argument, noting the local government "has not indicated that a greater number of shorter towers would be an acceptable alternative." *Corrales*, 642 F.App'x at 892. Likewise, in *Eco-Site*, the county pointed to a three-site alternative (from the same expert

used by the County in this case), but the court held the county did not satisfy its burden because the County did not show "that the County would definitely grant permits for all three sites" *Eco-Site*, 2020 U.S. Dist. Lexis 111855 at *13.  The same analysis applies here.  The County cannot complain that Horizon's proposal is not the least intrusive means of remedying the gap in service, but at the same time refuse to identify any alternative that it contends would be less intrusive or that the County would approve.

> ### b.    The County's Alleged Experts Do Not Identify Feasible, Less Intrusive Alternatives

The County has identified two purported expert witnesses, Mr. Afflerbach, and Mr. Clarkson, both of whom address, at least to some extent, alleged alternatives to the Horizon tower.  Because the County does not contend that any of the two witnesses' "alternatives" is a less intrusive alternative, and because the County will not even confirm that any of their "alternatives" would be approved by the County (SMF ¶¶ 97, 142 (Hill Tr. at 32:10-16, 59:19-60:4, 82:2-10), neither Mr. Afflerbach's nor Mr. Clarkson's testimony rebuts Horizon's case. *See Eco-Site*, 2020 U.S. Dist. Lexis 111855 at *13 (rejecting alleged alternatives where the County did not show "that the County would definitely grant permits for all three sites").  The County's position is dispositive.  However, even if the County were to now claim that either witness has identified potential alternative locations, those locations are not technologically feasible and/or practically viable alternatives to remedy the significant gap in service.

> ### (1)    Mr. Clarkson's Locations Are Speculative and Not Feasible

Mr. Clarkson's analysis identifies high points from which, he asserts, the "line of sight" or "viewshed" would cover the same or more total acres as the Horizon tower (but not the same acres).  (SMF ¶ 106.) As set forth in Horizon's motion to exclude Mr. Clarkson, this "viewshed" analysis does not address RF coverage and is not used by wireless experts to evaluate whether a

proposed facility would remedy a wireless coverage gap.  Indeed, Mr. Clarkson admits this.
(SMF ¶¶ 107-08 (Clarkson Dep. at 13:12-16:16, 16:19-22, 46:13-47:4).)  This alone renders his
analysis irrelevant.  *See Anacortes*, 572 F.3d at 998.

Mr. Clarkson identifies 28 locations that he claims are "most suitable," but he also states
that the locations were "provided to an RF Engineer to determine the feasibility of constructing a
shorter cell tower that would minimize visual impact." (SMF ¶ 109, 119.)  In his deposition, Mr.
Clarkson admitted that he is not qualified to say whether the locations he identifies are feasible
for a wireless tower to remedy the gap in service. (SMF ¶ 120 (Clarkson Dep. at 35:2-36:10).)
And the County's RF Engineering expert, Mr. Afflerbach, testified that he had ***not*** performed
any analysis of Mr. Clarkson's locations. (SMF ¶ 121 (Afflerbach Dep. at 26:7-11).)

Accordingly, Mr. Clarkson's preferred locations are wholly speculative.  Speculative
assertions by the County that there may be feasible alternatives are not sufficient to survive
summary judgment.  *See*, *e.g.*, *Anacortes*, 572 F.3d at 998 (rejecting the city's "possible"
alternatives as "too speculative"); *Eco-Site*, 2020 U.S. Dist. Lexis 111855 at *13; *Branch
Towers*, 2016 U.S. Dist. Lexis 89338 (E.D. Tenn. July 11, 2016) (holding local government
cannot merely speculate about alleged alternatives).  To constitute relevant alternatives, locations
must be both technologically feasible and available.  *Anacortes*, 572 F.3d at 998.

Moreover, Mr. Clarkson's locations are not viable for multiple reasons.  First, the
locations are outside the search ring and would not remedy the wireless coverage need.  (SMF ¶
80) (Kennedy Reply Rpt. ¶¶ 10-11).  Second, Mr. Clarkson's locations did not consider the
practical requirements for a site to be viable (as Mr. Afflerbach recognized). (SMF ¶ 123
(Mathisen Decl. ¶ 10; Afflerbach Dep. at 22:24-24:23.)  Mr. Clarkson did not consider whether
the property owners are willing to lease their land for a tower.  (SMF ¶ 124.)  Many of Mr.

Clarkson's locations are far from public roads or are otherwise inaccessible.  (SMF ¶ 125.)  Mr. Clarkson did not factor in whether his proposed sites already had electricity or could be served by electricity.  (SMF ¶ 126.)  Some sites are on slopes, making it infeasible to locate a tower. (SMF ¶ 127.)  At least one of his proposed alternatives is within 100 feet of other residences. (SMF ¶ 128.)  In short, Mr. Clarkson's alternatives are both speculative and not viable and, therefore, are not less intrusive alternatives that rebut Horizon's demonstration.  *Anacortes*, 572 F.3d at 998.  Indeed, the court in *Eco-Site* rejected the county's arguments for failure to demonstrate availability under these same factors.  2020 U.S. Dist. Lexis 111855 at *13.

### (2)   Mr. Afflerbach's "Small Cell" Proposal Is Not Less Intrusive

After agreeing that there is a significant gap in wireless service, Mr. Afflerbach asserts in his report that the "most non-obtrusive way" to address the wireless gap is to install "multiple wireless facilities, significantly short[sic] in height then[sic] the 195' tower requested."  (SMF ¶¶ 90-91. (Afflerbach Rpt. ¶ 23.)  Specifically, Mr. Afflerbach refers to installing four "small cell" facilities, which would involve new 47-foot tall poles installed in the Highway 20 right of way using poles specifically built for the purpose.[4]  (SMF ¶¶ 91-92 (Afflerbach Rpt. ¶¶ 21-23).)  Moreover, in his deposition, Mr. Afflerbach testified that although he did not include it in his Report, he believed two additional full-sized towers would be needed at the eastern and western entrances to Wapiti Valley in addition to the four small cells identified in his report.  (SMF ¶ 94.) (Afflerbach Dep. at 64:18-65:9.)

As noted above, contrary to Mr. Afflerbach's assertions about small cells being "non-

---

[4] The County's witness stated the County understood that the small cells might be attached to existing utility poles. (Hill Dep. at 40:14-25; 41:6-14; 19-24; 42:2-9.)  However, Mr. Afflerbach testified that his proposal assumed that Horizon would need to install new specially designed poles the design of which was in his Report. (Afflerbach Dep. at 46:20-47:9, 50:15-51:1.)

obtrusive," the County does **not** contend that the four small cell sites proposed by Mr. Afflerbach would be a less intrusive means of remedying the gap in service. (SMF ¶ 97.)

However, even if the County were to now claim that they are less intrusive, four small cells are not viable or technologically feasible. First, four small cells are not technologically feasible to remedy the gap in service. Horizon's RF expert, Mr. Kennedy, explains that at highway speeds (the speed limit along Highway 20 is no lower than 45 mph and frequently 55 mph) small cells would not be able to connect to travelers' phones quickly enough to provide service. (SMF ¶ 99 (Kennedy Reply Rpt. ¶ 12). Mr. Afflerbach testified that he lacked the expertise to dispute Mr. Kennedy's opinion. *Id.* (Afflerbach Tr. at 100:14-20, 102:4-6).

Moreover, because the small cells would have the antenna at 45 feet above ground, the area covered by the small cells would not close the coverage gap on their own, even under the analysis performed by Mr. Afflerbach. (SMF ¶ 100 (Kennedy Reply Rpt. ¶ 13).) Indeed, Mr. Afflerbach testified that he envisioned additional macro towers – like the Proposed Facility – on either end of the Valley, with the small cells supplementing coverage in between. (SMF ¶ 94.) However, he admitted that he had not actually undertaken an RF analysis of whether that scheme would adequately close Verizon's service gap; rather, his testimony is purely conceptual. (SMF ¶  (Afflerbach Dep. at 4519-46:5 ("It's just a conceptual").

Ultimately, Mr. Afflerbach's opinion in this case, and his speculation that multiple smaller towers would be a less intrusive alternative, is exactly like his opinions rejected in *Eco-Site*, 2020 U.S. Dist. Lexis 111855 at *13. In *Eco-Site*, the court recognized that Mr. Afflerbach admitted he is not qualified to address whether a proposal is a less intrusive means. *Id.* at *12. Moreover, the court rejected his speculative three-site "alternative" based on the same issues that are missing in this case, whether the locations are actually available, whether the neighbors

would object, or whether the County would even approve the sites. *Id.* at \*13. This Court should likewise reject Mr. Afflerbach's speculative multi-site suggestion in this case.

Because the County did not provide any concrete, viable alternatives to the Proposed Site or less intrusive, yet equally as effective, designs for the proposed tower, the County's denial effectively prohibits Verizon's ability to remedy a significant gap in its wireless service. Accordingly, Horizon is entitled to summary judgment under Section 332(c)(7)(B)(i)(II).

## IV.   THE COUNTY'S DENIAL IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE IN THE WRITTEN RECORD

### A.   Relevant Standards For Evaluating Substantial Evidence

Section 332(c)(7)(B)(iii) of the Act requires that "[a]ny decision by a State or local government or instrumentality therefor to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). Review under the substantial evidence standard, although "deferential," it is not a "rubber stamp." *T-Mobile Cent., LLC v. Wyandotte Cty.*, 528 F. Supp. 2d 1128, 1148 (D. Kan. 2007)*, aff'd*, 546 F.3d 1299, 1307 (10th Cir. 2008). While the court may not substitute its judgment for that of the fact-finder, "if the record as a whole contains conflicting evidence, the fact-finder must adequately explain its reasoning for rejecting or discrediting competent evidence." *Id.* Under the substantial evidence standard, the County cannot "simply disregard [Horizon's] presentation, without an evidentiary basis for doing so." *T-Mobile Cent., LLC v. City of Fraser*, 675 F. Supp. 2d 721, 736 (E.D. Mich. 2009). The Court must also determine whether the County "explained any credibility judgments it made and whether it gave reasons for crediting one piece of evidence over another." *T-Mobile Cent., LLC v. Charter Twp. of W. Bloomfield*, 691 F.3d 794, 799 (6th Cir. 2012).

Ultimately, the question of whether the Denial was supported by substantial evidence is

limited to the reasons articulated by the County in the written Denial.  *See., e.g.*, *City of Roswell*, 574 U.S. at 304 n.3.  Local governments cannot assert new grounds on appeal.  *Id.*  The County's regulations provide that an SUP may be granted only if the "use is in harmony and compatible with surrounding land uses and with the neighborhood *and* will not create a substantial adverse impact on adjacent properties." (SMF ¶ 39 (*County Regs.* § 4(d)(3) (emphasis added). The Denial asserts two grounds for denying the SUP: (1) that the Proposed Facility "would not be in harmony with the neighborhood" and (2) that there is a "high likelihood that the proposed communication tower and corresponding facility would have a significant adverse impact on the neighborhood."  (SMF ¶ 83 (Admin Rcd. 751-52).)

### B.   Generalized Opposition To Wireless Is Not Substantial Evidence That The Proposed Tower Would Not Be In Harmony And Compatible With Surrounding Land Uses

As to the County's first ground for denial, there is not substantial evidence the proposed tower will not be in harmony with surrounding land uses.  Although there were people who opposed the Application, the opposition reflected a general opposition to wireless (and even technology).  However, generalized opposition to the placement of wireless facilities, even based on aesthetic concerns, does not constitute substantial evidence under the Section 332(c)(7)(B)(iii).  *See, e.g., W. Bloomfield*, 691 F.3d at 800; *T-Mobile S. LLC v. City of Margate*, 2011 U.S. Dist. Lexis 36392, at *35 (S.D. Fla. Apr. 4, 2011); *Cellco P'ship v. Franklin Cty.*, 553 F. Supp. 2d 838, 851-52 (E.D. Ky. 2008); *Cellular S. Real Estate, Inc. v. City of Germantown*, 2015 U.S. Dist. Lexis 80416, at *13 (W.D. Tenn. June 22, 2015).  As the Sixth Circuit explained, if generalized objections sufficed, "any wireless facility could be rejected. Anyone who opposed a cell tower in their backyard could offer an excuse that it would be bad for the community. . . ." *W. Bloomfield*, 691 F.3d at 801.

Numerous examples make the point.  For example, at least one resident made a

presentation opposing the provision of wireless service in the area *at all*.  (SMF ¶ 73 (Adm. Rcd. 659-675).)  In his visual presentation, Mr. Rullman repeatedly indicated that residents preferred animals and other natural features of the area over cellular phones or personal wireless services. *Id.*  Ms. Clarkson asked the Board to "keep [in] mind the children" and "keep our valley the way it is for future generations."  (SMF ¶ 77.)  Ms. Monahan's comments encapsulate the sentiment of others, saying that "people [] have chosen to live in Wapiti because of what – the way Wapiti is. We don't want it to become Jackson. . . .We're okay with what we have in Wapiti.  *Id.*  In other words, they are opposed to any change, any wireless technology.

The items listed in the County's summary of resident comments allegedly supporting a finding that the tower would lack harmony and compatibility is overwhelmingly matters unrelated to whether the tower would be harmonious with surrounding properties.  It includes: limits in surrounding subdivisions; safety concerns regarding winds and ice fall; alleged wildlife habitat and migratory paths; allegations that there is no need for the service; and allegedly available alternative technologies.  (SMF ¶¶ 70-72; (Admin. Rcd. at 580-630, 650, 682-85, 689-700,  751).)  Even if those comments were accurate, which they are not,[5] allegations regarding safety, wildlife, the need for service, and alternative technologies are not relevant to harmony with surrounding uses, which is the standard under the County's regulations.  The Denial identifies the fact that other subdivisions have deed restrictions, but the County cannot effectively impose restrictions on Ms. Young's property simply because nearby subdivisions have restrictions in their deeds.

---

[5] These issues were not specifically identified as grounds for the Denial, nonetheless, they are not supported by any evidence in the record.  For example, during the P&Z Commission hearing, one of the Commissioners questioned Mr. Clarkson, who made the allegations, and revealed that Mr. Clarkson lacked any basis for allegations regarding wildlife, migratory birds, wetlands, impact on property values, or the engineering of the tower.  (SMF ¶ 54 (P&Z Tr. at 68:1-73:14).)

The Denial also asserts that "height analyses demonstrated the visual impact due to the height above the surrounding tree line and buildings." (Admin. Rcd. 751.)  The Denial does not explain its source, but presumably this is a reference to a presentation by Mr. Clarkson in which he purported to show photo-simulations of what the tower would look like. (SMF ¶¶ 51, 71.) Yet, during the P&Z Commission meeting, one of the Commissioners questioned Mr. Clarkson, revealing the significant flaws in the points he raised.  Notably, the Commissioner emphasized that Mr. Clarkson's photos were "all taken from a prospective [sic] looking up and emphasizing the tower" and people living in nearby developments, which are three quarters of a mile away or farther, would not have that kind of view. (SMF ¶ 58 (P&Z Tr. at 74:20-76:2).)  The Commissioner also emphasized that Clarkson's video presentation was "a bit deceiving in showing the ground as bare an[sic] open without any of the intervening vegetation and buildings involved from different perspectives."  *Id.* (P&Z Tr. at 74:25-75:11.) He also noted that Mr. Clarkson had depicted the tower as red, saying "And also the red color is very dramatic." *Id.*

In contrast, Horizon presented evidence at both hearings that the proposed tower at the Proposed Site met all of the applicable provisions of the County's regulations.  (SMF ¶¶ 49-50, 63-69.)  In contrast to Mr. Clarkson's misleading photo-simulations showing a looming red tower, Horizon presented professionally prepared photo-simulations that correctly included the nearby existing satellite dish and utility buildings. (SMF ¶ 76 (Horizon Feb. Pres. 161-62).)

Horizon also presented evidence demonstrating that citizens' speculative alternative locations were not viable, explaining that locating the tower at a higher elevation, as a number of residents suggested, would not eliminate the coverage gap and may actually require more facilities.  (SMF ¶ 66.)  Horizon also presented evidence showing that the Proposed Site was adjacent to and partially surrounded by vacant lots, public and private access roads, a highway,

RV park, and only a few other residential properties. (SMF ¶¶ 67-69, 80-81.) This evidence demonstrated that the proposed facility is harmonious and compatible with the surrounding land uses. The County's Denial fails to recognize the evidence from Horizon, much less explain the basis for rejecting it, and therefore fails under Section 332(c)(7)(B)(iii). (SMF ¶ 83 (Admin Rcd. 746-752).) *W. Bloomfield*, 691 F.3d at 799.

### C. There Is Not Substantial Evidence To Support The Assertion Of Likely Significant Adverse Impact

Regarding the second ground for denial, a "likelihood" of significant adverse impact "on the neighborhood" is not grounds for denial under the County's regulations. The County's regulations require a finding that the proposed use "will not create a substantial adverse impact on adjacent properties." County Regs. § 4(d)(3)(A). The Denial asserts a finding of a mere "likelihood," but such a speculative finding does not meet the standard of the County's own regulation.

Moreover, the relevant issue under the regulation is whether the use will have a significant adverse impact on "adjacent properties." *Id.* The County's regulations define "Adjacent landowners" to mean "land owned contiguous to and/or across the street, road, or highway. . . ." County Regs. § 2(8). The Denial's reference to the undefined "neighborhood" is attempting to sweep in a broader set of properties because the "adjacent" properties to the Proposed tower include a Mountain States Telephone installation with a 15 to 20-foot tower, dish, and utility building. (SMF ¶¶ 47, 69 (P&Z Tr. at 6:15-19.) Residential agricultural uses border the north along with a campground and two small exempt parcels owned by the Wyoming Transportation Commission, and the Red Barn gas station is adjacent on the west. *Id.* at 6:20-25. Residential and *vacant* lands border the east side of the parcel. *Id.* at 6:25-7:1.

Ultimately, there is no evidence supporting the Denial on this issue. Horizon introduced

multiple appraisal studies demonstrating that wireless towers do not have an adverse impact on property values.  (SMF ¶¶ 50, 68 (P&Z Tr. at 37:10-39:22; Jan. Tr. at 84:24-86:16).)  Local residents who argued about the impact on property values cited no evidence supporting their position. (SMF ¶ 56.) Speculation about adverse impact on property values is not substantial evidence.  *W. Bloomfield*, 691 F.3d at 801 ("substantial evidence must be substantiated by something").  And the Denial does not articulate the basis for the Board's giving weight to the residents' arguments over Horizon's evidence, as it must.  *Id.*

Accordingly, the County's denial was not based on substantial evidence in the written record in violation of Section 332(c)(7)(B)(iii).

## V.   AN ORDER REQUIRING THE COUNTY TO APPROVE THE SUP IS THE ONLY APPROPRIATE REMEDY

It is well-established that the appropriate remedy for the County's violation of Section 332(c)(7)(B)(i)(II) and (iii) is an order requiring the County to grant the SUP.  *See, e.g.*, *Eco-Site*, 2020 U.S. Dist. Lexis 111855 at *14 n.8 (citing *AT&T Mobility Servs., LLC v. Village of Corrales*, 127 F. Supp. 3d 1169, 1175 (D.N.M. 2015)); *T-Mobile Ne. LLC v. Inc. Vill. of E. Hills*, 779 F. Supp. 2d 256, 275 (E.D.N.Y.2011) (explaining that "[a]lthough the TCA does not specify a remedy for violations of [this] subsection ... the majority of district courts that have heard these cases have held that the appropriate remedy is injunctive relief in the form of an order to issue the relevant permits.") (internal quotation marks omitted) (ellipsis original); *Rancho Palos Verdes*, 544 U.S. at 123 n.3 ("[T]he majority of district courts ... have held that the appropriate remedy for a violation of the TCA is a mandatory injunction.").

## VI.   CONCLUSION

For the foregoing reasons, the Court should grant Horizon's Motion for Summary Judgment in its entirety and grant Horizon's requested relief.

DATED:  November 15, 2023.                    Respectfully Submitted,

                                              /s/ Isaac N. Sutphin
                                              Isaac N. Sutphin, P.C. (Wyo. State Bar # 6-3711)
                                              Andrea N. Grave (Wyo. State Bar # 8-6702)
                                              HOLLAND & HART LLP
                                              2020 Carey Avenue, Suite 800
                                              P.O. Box 1347
                                              Cheyenne, WY 82003
                                              Telephone: (307) 778-4200
                                              insutphin@hollandhart.com
                                              angrave@hollandhart.com

                                              Scott Thompson (Admitted *pro hac vice*)
                                              Jonathan P. Garvin (Admitted *pro hac vice*)
                                              Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
                                              555 12th Street NW, Suite 100
                                              Washington, DC 20004
                                              Telephone: (202) 434-7440
                                              SThompson@mintz.com
                                              JPGarvin@mintz.com

                                              ATTORNEYS FOR PLAINTIFFS
                                              HORIZON TOWER LIMITED, LLC
                                              and HORIZON TOWER, LLC.

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of November, 2023, a copy of the foregoing PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT was electronically filed and served via the CM/ECF system upon the following counsel for Defendants:

> BRYAN A. SKORIC, Park County Attorney
> JACK R. HATFIELD II, Deputy Park County Attorney
> 1002 Sheridan Avenue
> Cody, Wyoming, 82414

> */s/ Isaac N. Sutphin*
> Isaac N. Sutphin, P.C.