Isaac N. Sutphin, P.C. (Wyo. State Bar # 6-3711)
Andrea N. Grave (Wyo. State Bar # 8-6702)
HOLLAND & HART LLP
2020 Carey Avenue, Suite 800
P.O. Box 1347
Cheyenne, WY  82003-1347
Telephone: (307) 778-4200
insutphin@hollandhart.com
angrave@hollandhart.com

Scott Thompson (Admitted *pro hac vice*)
Jonathan P. Garvin (Admitted *pro hac vice*)
Alain P. Mathieu (*pro hac vice*  pending)
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
555 12th Street NW, Suite 1100
Washington, DC 20004
Telephone: (202) 434-7440
SThompson@mintz.com
JPGarvin@mintz.com
APMathieu@mintz.com
ATTORNEYS FOR PLAINTIFFS
HORIZON TOWER LIMITED, LLC
and HORIZON TOWER, LLC

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| HORIZON TOWER LIMITED, LLC and HORIZON TOWER, LLC, | |
| Plaintiffs, | |
| v. | |
| PARK COUNTY, WYOMING; BOARD OF COUNTY COMMISSIONERS OF PARK COUNTY, WYOMING; DOSSIE OVERFIELD, LLOYD THIEL, LEE LIVINGSTON, SCOTT MANGOLD, and SCOTT STEWARD, in their official capacity as Members of the Board of County Commissioners for Park County, Wyoming; | Civil Action No.:  Case No.  23-CV-0037-ABJ |
| Defendants | |

---

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO EXCLUDE THE OPINION AND TESTIMONY OF BRIAN CLARKSON

---

Pursuant to Federal Rule of Evidence 702, Plaintiffs Horizon Tower Limited LLC and Horizon Tower LLC. ("Horizon") hereby moves this Court for an order excluding the report and testimony of Brian Clarkson, offered by Defendants Park County, Wyoming; Board of County Commissioners of Park County, Wyoming; Dossie Overfield; Lloyd Thiel; Lee Livingston; Scott Mangold; and Scott Steward (in their official capacity as Members of the Board of Commissioners of Park County, Wyoming) (collectively, the "County" or "Defendants"). Mr. Clarkson's opinion and testimony concerns "viewshed" – a topic irrelevant to this case – and he is unqualified to opine or testify concerning any other topic, including the siting of a wireless tower.

## I.   INTRODUCTION

This case involves Plaintiff Horizon's application and proposal to install a wireless facility to remedy a gap in wireless service in the Wapiti Valley area of Park County, Wyoming, and the County's denial of Horizon's application, in violation of Section 332(c)(7)(B) of the Federal Communications Act, 47 U.S.C. § 332. Horizon and the County have each engaged radiofrequency (RF) engineers as experts; both RF engineers agree that the wireless service gap exists, that there are technical and practical limitations on locations where a tower can be deployed to cure a service gap, and that the question of where a wireless facility can be placed is highly technical, complex, and nuanced.

Under the guise of an expert report, apparently concerning whether an alternative location for Horizon's tower exists, Defendants offer the report of Brian Clarkson, the president of the Wapiti Valley Preservation Society, an organization that opposes the tower. Clarkson, who owns a home approximately 800 feet from the proposed location, also personally opposes the tower location, and was one of the local citizens who moved to intervene in this case in an effort to uphold the County's effective prohibition of personal wireless service.  Importantly, Clarkson

admits that he has no experience or expertise in wireless tower location or design. Rather, his sole expertise is in "viewshed" – or "the natural environment that is visible from one or more viewing points." https://www.merriam-webster.com/dictionary/viewshed. He asserts that he was "asked to share [his] viewshed or line-of-sight analysis with an RF Engineer" to assess the viability of alternate locations. However, nothing in his analysis contains *any* input from an RF engineer concerning the viability or feasibility of any of his locations; and Defendants' RF expert admits that he did not assess any of Clarkson's proposed locations.

Although the feasibility of alternative wireless locations may be relevant to Horizon's claims, Clarkson is not qualified to testify on that topic. His expertise, opinion, and testimony concerning viewshed ultimately address nothing more than *line of sight* – a topic not relevant under applicable law. To the extent Clarkson attempts to leave open the possibility that he may opine or testify concerning the "intrusiveness" of wireless towers from one location to another, he is likewise unqualified, and offers nothing more than his own personal, layman opinion. More importantly, the County does not contend that Mr. Clarkson's locations constitute less intrusive means of addressing the gap in wireless service.

For these reasons, and as detailed below, Clarkson's opinion and testimony is plainly inadmissible, and should be excluded in its entirety.

## II.     LEGAL STANDARD

To determine whether an expert opinion is admissible, the district court performs a two-step analysis. First, the court must determine whether the expert is qualified by "knowledge, skill, experience, training, or education" to render an opinion. *Id*. (citing Fed. R. Evid. 702). *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). Second, if the expert is sufficiently qualified, the court must determine whether the expert's opinion is reliable under the

principles set forth in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). *Id.*

As the U.S. Supreme Court explained in *Daubert*, under Rule 702, the district court has an important gatekeeping function regarding the admissibility of expert opinions to ensure that all evidence is both relevant and reliable. *Roe v. FCA US LLC*, 42 F.4th 1175, 1180 (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)). This obligation involves a two-part inquiry. *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 883-884. First, the court must determine if the expert's proffered testimony . . . has a reliable basis in the knowledge and experience of his discipline. *Id.* (citing *Bitler v. A.O. Smith Corp.*, 391 F.3d 1114, 1119 (10th Cir. 2004); *Daubert*, 509 U.S. at 592). Second, the district court must further inquire into whether proposed testimony is sufficiently "relevant to the task at hand." *Id.* (quoting *Daubert*, 509 U.S. at 597).

## III.   ARGUMENT

### A.  CLARKSON'S OPINION AND TESTIMONY ARE NOT RELEVANT.

Under applicable law, Clarkson's opinion and testimony are wholly irrelevant to the claims and defenses in this case, and therefore must be excluded. *Daubert*, 509 U.S. at 597 (1993).

#### 1.    The Applicable Standard For Evaluating An "Effective Prohibition" Claim Under Section 332(c)(7)(B)(i)(II).

As also set forth in detail in Horizon's simultaneously-filed motion for summary judgment, under the Communications Act, state and local governments may not "prohibit or have the effect of prohibiting the provision of personal wireless services." *AT&T Mobility Servs., LLC v. Vill. of Corrales*, 642 Fed. Appx. 886, 887 (10th Cir. 2016) (citing 47 U.S.C. § 332(c)(7)(B)(i)(II)). Courts in the Tenth Circuit have previously held that an effective prohibition of wireless service exists if (a) the wireless carrier has a significant gap in service and (b) the proposed facility is the least intrusive means of curing the gap. *See Id.* at 887-888. However, in 2018, the Federal Communications Commission ("FCC") issued a declaratory ruling which, among other things,

explained that the two-part test used by courts, such as the Tenth Circuit, was incorrect. *See Accelerating Wireless Broadband Deployment by Removing Barriers to Infrastructure Investment*, 33 FCC Rcd 9088, ¶ 37 (2018) ("2018 FCC Order"). Instead, the FCC explained: "an effective prohibition occurs where a state or local legal requirement ***materially inhibits a provider's ability to engage in any of a variety of activities related to its provision of a covered service.***" *Id.* ¶ 37 (emphasis added). The FCC's 2018 Order was affirmed on appeal by the Ninth Circuit Court of Appeals, *City of Portland v. United States*. 969 F.3d 1020, 1035 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 2855 (2021), and the Third Circuit Court of Appeals has recently followed the FCC's 2018 Order, emphasizing that the old two-part test had no basis in the language of the statute and had been "cobbled together" by early court decisions, *Cellco Partnership v. White Deer Township Zoning Hearing Board*, 74 F.4th 96, 103 (3rd Cir. 2023).

### 2.   Viewshed Is Not Relevant To Whether The County's Denial Has The Effect Of Prohibiting Wireless Service.

Under either the "new" FCC standard or the "old" "least intrusive means" standard, Clarkson's opinion and testimony is wholly irrelevant, and therefore must be excluded. *See Daubert*, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful."); *United States v. Gunn*, 2023 U.S. App. LEXIS 8192, at *34 ("[D]istrict courts, in their gatekeeping role, examine expert reliability and relevance. Irrelevant expert testimony, even by a qualified expert, is inadmissible."). Under the new "materially inhibit" standard, an analysis of alternative locations is not appropriate (thus making Clarkson's opinion and testimony irrelevant). *See*, 2018 FCC Order ¶¶ 34, 37. But even under the "old" "least intrusive means" standard, Clarkson's testimony nonetheless does not relate to any issue in the case.

Under the previous standard, Horizon's burden would be to make "a showing that a good faith effort has been made to identify and evaluate less intrusive alternatives, *i.e.*, that the provider

has considered less sensitive sites, alternative system designs, alternative tower designs, placement of antennae on existing structures, etc." *T-Mobile USA Inc. v. City of Anacortes*, 572 F.3d 987, 996 n. 10 (9th Cir. 2009); *see also Corrales*, 642 Fed. Appx. at 890. Upon Horizon's showing that it investigated other sites and designs, the County would have the burden to demonstrate that **technically feasible and actually available** alternatives exist.  *See, e.g., City of Anacortes*, 572 F.3d at 996; *Nextel Commc'ns of Mid-Atl., Inc. v. Town of Provincetown*, 2003 WL21497159, at *11 (D. Mass. June 26, 2003); *Nextel Commc'ns of Mid-Atl., Inc. v. Town of Wayland*, 231 F. Supp. 2d 396, 409 (D. Mass 2002).

While Clarkson purports to show that alternative locations for the tower ***may*** exist, he makes no attempt to assess (much less explain) whether any of those locations are technically feasible or actually available. As he discusses in his expert report, he merely uses computer mapping software to demonstrate that at a height of 195 ft. (*i.e.* the top of Horizon's proposed tower), there would be a line of sight to 5,552 acres of property, and to identify other locations where a tower that is shorter than 195 ft. would have the same or greater line of sight of 5,552 **different** acres. *See* Ex. 1, Report of Brian Clarkson ("Clarkson Rep.") at 5-8.[1] But the "viewshed" from the top of the proposed tower is not a relevant factor under either the new or the old standard. The total number of acres that could be seen from the top of the tower does not even speak to the visual intrusiveness of the tower because, as Clarkson admits, it does not address whether the rest of the tower could be seen, or if so how much of it could be seen or in relation to what other sites. *See* Ex. 2, Transcript of Deposition of Brian Clarkson ("Clarkson Dep. Tr.") at 37:4-21.

It appears, instead, that although he readily admits he is not an expert in radiofrequency

---

[1] Because Clarkson's report does not include page numbers, page numbers referenced herein shall correspond with the page numbers of the Docket filing.

propagation, (Clarkson Rep. at 15; Clarkson Dep. Tr. 46:19-47:9), Clarkson is suggesting his line of sight can be a proxy for radiofrequency wireless coverage. Yet, he ignores basic RF engineering principles and the numerous practical and technical requirements for choosing the site of a wireless tower. *See, e.g.*, Clarkson Dep. Tr. 54:13-20 (Q: What factors did you evaluate in determining what you believe to be the most suitable locations? A: Well – so that would just be the – essentially the elevation, the viewshed, and outside of the subdivisions and wetlands. Q: No other factors were considered? A: No, sir."). Clarkson did not consider, for example, whether there was an at least 50-foot by 50-foot flat area suitable for construction (*Id*. at 55:3-7), whether there are fiber optic lines located in any of the locations (*Id*. at 55:8-13), whether there were any deed-based restrictions on the use of any of the relevant parcels (*Id*. at 55:17-21); whether the owners of the relevant parcels would be willing to lease space for the tower (*Id*. at 55:22-56:1), whether the parcels were accessible by way of a public road (*Id*. at 57:23-25), whether the slope of any of the proposed terrain would be prohibitive to constructing a tower (*Id*. at 60:14-17); or even whether electricity is available at the proposed locations (*Id*. at 60:18-21). These are factors that both Horizon's and the County's RF experts agree must be considered in determining whether a particular location is feasible or available for the construction of a wireless tower. *See, e.g.*, Ex. 3, Transcript of Deposition of Lee Afflerbach ("Afflerbach Dep. Tr.") at 22:24-25:6.

Further, although Clarkson explicitly states in his Report that an RF expert needs to evaluate his locations, Defendants' RF expert did not assess whether any of Clarkson's proposed locations could actually support a wireless tower, let alone whether placing a tower at either location could cure the gap in wireless service. Afflerbach Dep. Tr. 26:7-11. Indeed, Mr. Afflerbach noted that he would first need to know whether the locations met the practical necessities for a tower location—which Clarkson ignored. Afflerbach Dep. Tr. 22:24-25:6.

Even if the viability of alternate tower locations was relevant under the new FCC standard, Clarkson does not even claim that any of his proposed alternative sites actually *are* viable (*see* Clarkson Dep. Tr. 51:17-22 ("Q: You don't claim that the 107 locations you have identified with a 50-foot tall tower would achieve the same wireless service as would be achieved with the proposed Horizon Tower; correct? A: Yes, that's correct. I'm not an expert there."); and he admits that he does not know whether *any* of them are. *See, e.g.*, Clarkson Dep. Tr. 35:2-6 (Q: And you [need your work] to be reviewed by an RF engineer because you don't know what may or may not be technically viable from a radiofrequency perspective; isn't that true? A: Yes, that is correct."). At most, Clarkson merely speculates – without any input from an RF expert or any analysis other than line of sight – that the alternatives that he suggests *might* be viable. But as courts in this and other Circuits held under the previous standard, "[a] speculative alternative is not a viable alternative." *Eco-Site LLC v. Cty. of Pueblo*, 2020 U.S. Dist. LEXIS 111855, at *13 (D. Colo. June 25, 2020) (citing  *T-Mobile W. Corp. v. City of Huntington Beach*, No. CV 10-2835 CAS EX, 2012 U.S. Dist. LEXIS 148170 (C.D. Cal. Oct. 10, 2012); *Anacortes*, 572 F.3d at 998).

Therefore, Clarkson's opinion and testimony is not "relevant to the task at hand," and should be excluded. *Daubert*, 509 U.S. at 597.

### B. CLARKSON IS NOT QUALIFIED TO OPINE ON ANY TOPIC OTHER THAN VIEWSHED.

To the extent Clarkson purports to opine on any topic other than viewshed (which is irrelevant) his opinion and testimony should be excluded because he is not qualified to render such an opinion. *See Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 ("affirming decision of lower court to exclude proposed expert as unqualified, nothing that the proposed expert conceded several times that she knew little -- if anything -- about the subject."); *Bruce v. Minn. Life Ins. Co.*, 2021 U.S. Dist. LEXIS 219374, *6-7 (holding that proposed expert is not qualified,

noting "[t]he critical factor in determining the competency of an expert is whether that expert has knowledge that can assist the trier of fact in resolving the issues before it."). By Clarkson's own admission, viewshed is the only topic on which he is qualified to opine. *See* Clarkson Dep. Tr. 33:3-8 ("Q: And what is it that you claim to be an expert on? A: Topography, line of sight, viewshed. Q: Anything else? A: No."). Clarkson repeatedly conceded that he is unqualified to opine on topics such as whether any of his proposed locations would achieve the same wireless service as the Horizon tower (*Id*. at 51:17-22); radiofrequency coverage (*Id*. at 46:19-25); the factors that affect radiofrequency propagation (*Id*. at 36:3-10); or even what makes a location a feasible place to install a wireless tower (*Id*. at 31:15-18; 35:2-6; 67:9-68:1). Therefore, to the extent that he seeks to opine on any of these topics, his opinion and testimony should be excluded. *103 Investors*, 470 F.3d at 990.

While unclear, it also appears that Clarkson attempts to reserve the ability to opine on whether or not any specific alternative would be a less intrusive means of addressing wireless service than the Horizon Tower.  *See* Clarkson Dep. Tr. 98:18-24 (Q: "Do you purport to be testifying as an expert regarding the intrusiveness of any potential wireless installation as compared to the Horizon proposed tower? A: I think I would probably lean towards no on that. I think kind of the same thing, you know, personal opinion, but I would say that it would be outside my expert opinion. I'm not sure who the expert would be in the intrusiveness.").  Yet, he is also specifically unqualified to opine on that topic. Indeed, Clarkson admits that his opinions concerning intrusiveness are based on his personal opinion and what he calls "common sense." *See id*. at 81:4-6 ("Q: What is the basis for your opinion [that a 100 ft. tower is less intrusive than a 195 ft. tower]? A: Common sense … Q: Is it your opinion that a hundred-foot tower is always less intrusive than a 195-foot tower regardless of location? A: No. No, I would not say that.");

82:5-13 ("Q: Am I correct in understanding that that opinion is based on your personal view of what is or isn't visually intrusive? A: Well, yeah … there is a possibility that in a given location, that a 195-foot tall tower would be less intrusive than a hundred-foot tall tower."); 97:17-23 ("Q: Do you intend to offer an opinion purportedly based on your expertise regarding the relative visual impact to the great monopine? A: I guess I would say that I could give a personal opinion, but I would say it's – I'm not going to – I couldn't say that it's an expert opinion."). It is of course axiomatic that mere personal opinions are inadmissible as expert testimony. *See, e.g.*, *Hatfield v. Wal-Mart Stores, Inc.*, 335 Fed. Appx. 796, 798-799 (10th Cir. 2009) (affirming decision of trial court to, among other things, exclude the testimony of a purported expert witness whose opinions "were not based on technical or specialized knowledge and were merely personal opinions.").

Critically, the County does not contend that any of Mr. Clarkson's identified locations are less intrusive means of remedying the gap in wireless service.  Horizon deposed the County's Rule 30(b)(6) designee on this issue, and they admitted the County does not contend that any of Mr. Clarkson's locations are less intrusive.  Ex. 4, Transcript of Deposition of Joy Hill ("Hill. Dep. Tr.") at 82:2-10. And the County has not undertaken any investigation of whether Mr. Clarkson's locations are feasible for installation of a wireless facility. *Id.* 82:11-15.

Therefore, to the extent Clarkson seeks to opine on any topic other than viewshed, which is inadmissible because irrelevant, his opinion and testimony should likewise be excluded, as Clarkson is wholly unqualified to offer any such opinion. *Id.*

## IV.    CONCLUSION

For the foregoing reasons, the Court should exclude the opinion and testimony of Brian Clarkson in its entirety.

DATED:  November 15, 2023.                    Respectfully submitted,

*/s/ Isaac N. Sutphin*
Isaac N. Sutphin, P.C. (Wyo. State Bar # 6-3711)
Andrea N. Grave (Wyo. State Bar # 8-6702)
HOLLAND & HART LLP
2020 Carey Avenue, Suite 800
P.O. Box 1347
Cheyenne, WY 82003
Telephone: (307) 778-4200
insutphin@hollandhart.com
angrave@hollandhart.com

Scott Thompson (Admitted *pro hac vice*)
Jonathan P. Garvin (Admitted *pro hac vice*)
Alain P. Mathieu (*pro hac vice*  pending)
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
555 12th Street NW, Suite 100
Washington, DC 20004
Telephone: (202) 434-7440
SThompson@mintz.com
JPGarvin@mintz.com
APMathieu@mintz.com

ATTORNEYS FOR PLAINTIFFS
HORIZON TOWER LIMITED, LLC
and HORIZON TOWER, LLC.

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of November, 2023, a copy of the foregoing was electronically filed and served via the CM/ECF system upon counsel of record in this matter:

> BRYAN A. SKORIC, Park County Attorney
> JACK R. HATFIELD II, Deputy Park County Attorney
> 1002 Sheridan Avenue
> Cody, Wyoming, 82414

> */s/ Isaac N. Sutphin*
> Isaac N. Sutphin, P.C.