Bryan A. Skoric (Wyo. State Bar #6-2834)
Jack R. Hatfield II (Wyo. State Bar #7-5118)
Office of the Park County and Prosecuting Attorney
1002 Sheridan Avenue
Cody, Wyoming, 82414

ATTORNEYS FOR DEFENDANTS
PARK COUNTY, WYOMING; BOARD OF
COUNTY COMMISSIONERS OF PARK COUNTY,
WYOMING; DOSSIE OVERFIELD, LLOYD THIEL,
LEE LIVINGSTON, SCOTT MANGOLD,
and SCOTT STEWARD, in their official capacity
as Members of the Board of County
Commissioners for Park County, Wyoming.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| HORIZON TOWER LIMITED, LLC and HORIZON TOWER, LLC, <br><br> Plaintiffs <br><br> v. <br><br> PARK COUNTY, WYOMING; BOARD OF COUNTY COMMISSIONERS OF PARK COUNTY, WYOMING; DOSSIE OVERFIELD, LLOYD THIEL, LEE LIVINGSTON, SCOTT MANGOLD, and SCOTT STEWARD, in their official capacity as Members of the Board of County Commissioners for Park County, Wyoming. <br><br> Defendants. | Civil Action No. 23-CV-00037-ABJ |

**DEFENDANTS' OBJECTION TO MAGISTRATE'S ORDER TO EXCLUDE REPORTS AND TESTIMONY OF BRIAN CLARKSON**

COMES NOW, Defendants Park County, Wyoming; Board of County Commissioners of Park County, Wyoming; Dossie Overfield, Lloyd Thiel, Lee Livingston, Scott Steward and Scott Mangold, ("BOCC") by and through their undersigned counsel, and hereby files its objection to Magistrate Kelly R. Rankin's Order to Exclude the Report and Testimony of Brian Clarkson.

Before the Court is the Defendant's Objection to the Magistrate Order Granting Plaintiff's Motion to Exclude the Opinions and Testimony of Brian Clarkson. Pursuant to Fed. R. Civ. P. 72(a): "A party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to. The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."

## Relevant Law

Pursuant to Fed. R. Evid. 702, the Court functions as a gatekeeper when admitting expert opinions:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> **(b)** the testimony is based on sufficient facts or data;
> **(c)** the testimony is the product of reliable principles and methods; and
> **(d)** the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

1

Fed. R. Evid. 702. Under the Rules, the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable. *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 589, 113 S. Ct. 2786, 2795, 125 L. Ed. 2d 469 (1993). This gatekeeping function is, arguably, most important in jury trials. The Daubert Court has established that the Court's gatekeeping function is to benefit the jury – the court is charged with the duty to determine if evidence is reliable to be admitted for jury consideration. Judges must shield the jury from junk science and false expertise.

However, this case will not be heard by a jury and, therefore, the "gatekeeping" function of the court should be minimized. A district court judge should be able to evaluate the expert value of Mr. Clarkson's report without worrying about considerations for a jury. In other words, a District Court Judge can determine the quality of the flour in baking a whole cake. Defendants have offered Mr. Clarkson to opine as an expert on viewshed and provide a suitability analysis. His opinions consist of other areas where a wireless tower would be less intrusive to the pristine Wapiti Valley and east gateway to Yellowstone National Park. Mr. Clarkson is a licensed land surveyor and geospatial services manager that has done land suitability analyses for other entities in the past. Horizon does not question Mr. Clarkson's qualifications or his report. Mr. Clarkson's familiarity with Park County and his expertise conducting suitability analysis for land uses in Park County speaks for itself.

## LEGAL ARGUMENT

Under the Telecommunication Act (47 U.S.C.A. § 32), state and local governments may not "prohibit or have the effect of prohibiting the provision of personal wireless services. *AT&T Mobility Servs., LLC v. Vill. of Corrales*, 642 Fed. Appx. 886, 887 (10th Cir. 2016) (citing 47 U.S.C. § 332(c)(7)(B)(i)(II)). The Tenth Circuit determined that to prove "effective prohibition" has taken place, the complainant must prove that: (1) a wireless carrier suffers from a significant gap in the provision of wireless services and (2) that the proposed facility is the least intrusive means of addressing the significant gap in service. *Id*. at 887-888. The BOCC found Horizon's application and proposal "did not meet the approval standards required by the zoning regulations; specifically, that the tower was not in harmony with the surrounding area and would likely have adverse impacts on the area." As such, viewshed is absolutely a fundamental issue to which RF engineers simply cannot analyze or offer testimony.

No authority prohibits a local government from denying a tower placement due to aesthetic incompatibility. See *Green Mountain Realty Corp. v. Leonard*, 688 F.3d 40, 53 (1st Cir. 2012). "Aesthetics…can…be a permissible ground for denial of a permit under the Act if it is supported by substantial evidence…. Generalized aesthetic concerns do not constitute sufficient evidence." *T-Mobile Cent., LLC* at 1161. Congress recognized "state and local governments often have legitimate aesthetic reasons for accepting some deployments [of personal wireless facilities] and rejecting others." *City of Portland v. United States*, 969 F.3d 1020, 1040 (9th Cir.

3

2020). Often, personal wireless facilities marring viewshed is a highly contentious issue for local governments and its residents. Congress recognized these issues and sought to preserve local government control over their aesthetic plan for their community. 47 U.S.C.A. § 332(c)(7)(A).

Throughout his expert report, Mr. Clarkson explains his method for finding potential sites for Plaintiffs' proposed cell tower based upon viewshed and line of sight. RF engineers are certainly not experts when it comes to the intrusiveness of any facility. See *Eco-Site LLC v. Cnty. of Pueblo, Colorado*, No. 17-CV-02535-CMA-STV, 2020 WL 3469706, at *4 (D. Colo. June 25, 2020) (Lee Afflerbach testified, "[He] is not qualified to testify to least intrusive means"). Intrusiveness is information that is useful to a factfinder because it helps form the whole puzzle. As admitted by RF expert, Mr. Afflerbach, the RF engineer alone cannot piece together the whole puzzle.

At the request of the BOCC, Mr. Clarkson methodically detailed other potentially feasible sites that would potentially be in harmony with the general purposes of Park County's zoning regulations. Mr. Clarkson factored in buffer zones, wetland and wildlife corridors in his analysis. This is the kind of information expected to be analyzed before simply choosing a location to site a tower. Mr. Clarkson provided necessary evidence to analyze the potential intrusiveness of proposed facilities. Horizon's efforts as to intrusiveness are inadequate next to Mr. Clarkson's report. Horizon rejected this information on the basis that Mr. Clarkson failed to perform a radio frequency analysis. It is clear that Horizon is not interested in investigating any alternative site – a duty, that Park County contends, is essential

4

to Horizon's burden to prove that the site is satisfying the tests deployed by the 10th Circuit.

Horizon has failed each prong of the test and has, therefore, failed to carry its burden of proof. Horizon has failed to show that it conducted a reasonable, good faith search for alternate sites that would provide wireless service providers with comparable RF coverage. Horizon claims that Verizon's gap in service is caused by a lack of reliable in-building residential and in-vehicle coverage. Before a significant gap is established, the 10th Circuit established that certain evidence be presented of any such gap. In *T-Mobile Cent., LLC v. Unified Gov't of Wyandotte Cnty./Kansas City, Kan.*, the wireless service carrier, T–Mobile presented evidence of in-building and in-vehicle service through a radio frequency engineering report that it submitted with its application in the coverage report, along with propagation maps demonstrating the existing gap in coverage and how the proposed site will fill the gap. 528 F. Supp. 2d 1128, 1166 (D. Kan. 2007), *aff'd in part sub nom. T-Mobile Cent., LLC v. Unified Gov't of Wyandotte Cnty., Kansas City, Kan.,* 546 F.3d 1299 (10th Cir. 2008). Further, T–Mobile also submitted results of a drive-test conducted at city staff's request, which confirmed the propagation prediction analysis establishing a significant in-building service coverage gap. *Id.* at 1167. T–Mobile also presented evidence of dropped calls. *Id.* Ultimately, it was decided by the court that T-Mobile had demonstrated the existence of a significant gap with respect to (1) outdoor; (2) in-vehicle; or (3) in-building coverage. On balance, the court found that the propagation maps, drive test results, and / or call test results introduced supported the conclusion

5

that T-Mobile had a "significant gap" in service. *Id.* at 1169.

In the present case, Horizon has not provided sufficient evidence of a wireless service provider's significant gap in service. Horizon provided generic maps entitled "Existing Verizon RSRP coverage" with a five-mile radius extending into the forest service and wilderness areas. Discovery answers provided by Plaintiffs revealed that any data evidence outlining how the proposed tower would provide service to the purported coverage gap could not be tendered because it would be, allegedly, too speculative. (Exhibit C, Pls.' Resp. 1st S. Interrog. #21 and #25). Horizon has not even provided a map from Verizon (or any other wireless service provider) showing exactly the area that Verizon actually considers a significant gap in service. Instead, Horizon has only produced a map that was, allegedly, the product of verbal communications between Horizon and Verizon. (Def's. Req. for Admis. Nos. 8, 10 – 12). Also, Mr. Kennedy, Horizon's RF expert, was not asked by Horizon to model other sites or other heights of the Tower, as evidenced in Mr. Kennedy's deposition (Dep. of S. Kennedy pg. 77 – 80). In addition, Mr. Kennedy modeled his proposed site only on Google Earth; Mr. Kennedy did not use the results of a drive-test in modeling his proposed site for Horizon Tower. Mr. Kennedy also did not provide the results of the drive-test to the County. Further, the equipment Mr. Kennedy used was described as: "It's a very simple scanner...It's kind of just a – it's a pocket scanner. It's not really anything. It's like buying a cheaper car radio instead of the expensive car radio." (Dep. Of S. Kennedy, 90:4-8). The whole of Mr. Kennedy's modeling procedures and drive tests are explained throughout his deposition (Id. at 89-41). Mr.

6

Kennedy's deposition reveals that Horizon's RF engineering expert did not use tools and methods in measuring a "gap" in services that should be considered by the 10th Circuit to be satisfactory in proving that there is a "significant gap" in services. More importantly, it is also clear throughout Mr. Kennedy's deposition that the intrusiveness of the site was never a factor in his models and calculations.

It is true that Horizon did offer to paint the tower whatever color the BOCC would want should the tower be constructed. (Def's. Req. for Produc. No. 1). This was the only alternative that Horizon undertook to offer in its application to the BOCC, which hardly satisfies Horizon's duty to seek alternative sites or locations in order to satisfy the requirements of Park County. The alternative offered is a far cry from the evidence presented by T-Mobile in the T-Mobile Cent., LLC v. Unified Gov't of Wyandotte Cnty./Kansas City, Kan. case.

Horizon has also failed to show that the proposed site is the least intrusive means of remedying a service gap. As discussed before, an RF engineer is not an expert on intrusiveness. An RF expert determines the gap in services. Horizon presented a single site to the Park County BOCC and the Park County BOCC denied Horizon's application based on aesthetic concerns; there was no explanation from Horizon as to why the site was considered to be the least intrusive. Instead, Horizon simply found a willing landowner and failed to secure evidence that the site picked was least intrusive. In other words, Horizon put the cart before the horse.

As Plaintiffs state, the analysis does not explain "whether any of those locations are technically feasible or actually available." (ECF No. 48, at 6). However,

7

this is not the job of Park County. The duty of Horizon to satisfy the 10th Circuit's test is not a duty shared by Park County since a state or local government has no duty to assist any party in locating a suitable tower location. In *Stout & Co., LLC v City of Bel Aire, Kansas*, it was stated, "'[w]e doubt that Congress intended local zoning boards to pay for experts to prove that there are alternative sites for a proposed tower.'" No. 2:15-CV-09323-JTM, 2016 WL 3759440, at *11 (D. Kan. July 14, 2016), citing *U.S. Cellular Tel of Greater Tulsa L.L.C. v. City of Broken Arrow, Oklahoma*, 340 F.3d 1122, 1137 (10th Cir. 2003). The sheer volume of potentially feasible alternative sites proposed in Mr. Clarkson's report demonstrates Horizon never considered if their proposed tower truly met the harmony objectives necessary for a SUP in this area. Mr. Clarkson is not qualified to determine whether his locations are feasible to remedy the alleged significant gap, and Park County has not retained him for such purpose. However, he is qualified to help determine an important aspect to Park County residents; whether the tower is the least intrusive at the proposed location. His presentation shown at the meetings and his modeling of the tower was properly weighed in the BOCC's decision that the intrusiveness of the proposed tower was contrary to Park County's DSR. His expert report and testimony is necessary.

It is, therefore, incorrect to contend, "[s]imply stating that there are other areas with less visual impact is not useful to a factfinder." (ECF No. 60, at 6). Mr. Clarkson's analysis is entirely helpful, if not critical to show a factfinder that Horizon did not meet the burden of proof that there is a significant gap in service and that the

proposal is the least intrusive means of addressing the gap in service. While it may be true that Mr. Clarkson's report was meant to provide a starting point for another expert, it is not the burden of Park County to hire and retain an RF expert to evaluate these sites. That is a burden that Horizon should have done and, as the record shows, did not do. Instead, Horizon presented one tower and location to the BOCC with no other alternative sites; Horizon also presented this site without the data to support why it was chosen, evidence of a significant gap, how the tower remedies a gap, and how the tower is the least intrusive.

## CONCLUSION

Defendants contend that aesthetics are a legitimate reason for a local government to reject applications to construct wireless facilities and this rebuttal is entirely necessary and pertinent to the test followed by the 10th Circuit. Defendants also contend that Mr. Clarkson's viewshed analysis is pertinent to proving the second prong of the test employed by the 10th Circuit.

As discussed, Section 332(c)(7) of the TCA was written to preserve the authority of state and local governments to apply zoning regulations regarding the placement of wireless facilities and courts are in-line with this principle: In *T-Mobile South, LLC v. City of Roswell, Ga.*, the U.S. Supreme Court noted regarding the Telecommunications Act (TCA), "The Act generally preserves 'the traditional authority of state and local governments to regulate the location, construction, and modification' of wireless communications facilities…" citing *Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 115, 125 S.Ct. 1453, 161 L.Ed.2d 316 (2005); see § 332(c)(7)(B).

9

Courts have deferred to an administrative agency's decision unless the evidence is clearly contrary to the overwhelming weight of the evidence on record. *Dale v. S & S Builders, LLC*, 2008 WY 84, ¶ 11, 188 P.3d 554, 558 (Wyo. 2008). The administrative body is the trier of fact and has the duty to weigh the evidence and determine the credibility of witnesses. There is no overwhelming evidence on the record that Horizon should have been granted approval of their SUP application. The BOCC properly heard the evidence from Horizon, the Planning and Zoning Commission, and members of the public and the BOCC properly issued a denial of Horizon's Application.

To state that the Court need not ascertain the merit of aesthetics being a legitimate reason for a local government to deny a tower application is plainly incorrect. It is specifically the intention of the TCA and it is an intention that the Supreme Court has legitimized. To dismiss aesthetics is clearly against the intention and the spirit of the legislation. As such, RF Engineers are not qualified to testify to the second prong of the test; RF engineers cannot speak to the intrusiveness of cell phone towers. Therefore, a Court should not ignore the value of a viewshed analysis in determining whether a tower is intrusive. In fact, it is required that intrusiveness be evaluated. Excluding Mr. Clarkson's testimony is, therefore, contrary to the law and the Federal Rules of Civil Procedure 72(a) requires that the magistrate order be set aside.

WHEREFORE, Defendants ask the Court to set aside the Magistrate's Order Excluding the Reports and Testimony of Brian Clarkson.

Dated this 24th day of January, 2024.

/s/ *Bryan A. Skoric*          .
Bryan A. Skoric (WSB #6-2834)
Park County and Prosecuting Attorney
Park County Attorney's Office
1002 Sheridan Ave.
Cody, Wyoming 82414
(307) 527-8660

/s/ *Jack R. Hatfield II*          .
Jack R. Hatfield II (WSB #7-5118)
Deputy Park County Attorney
Park County Attorney's Office
1002 Sheridan Ave.
Cody, Wyoming 82414
(307) 527-8660

ATTORNEYS FOR DEFENDANTS
PARK COUNTY, WYOMING; BOARD OF
COUNTY COMMISSIONERS OF PARK
COUNTY, WYOMING; DOSSIE
OVERFIELD, LLOYD THIEL,
LEE LIVINGSTON, SCOTT MANGOLD,
and SCOTT STEWARD, in their official
capacity
as Members of the Board of County
Commissioners for Park County, Wyoming.

CERTIFICATE OF SERVICE

      I hereby certify that on the 24th day of January, 2024, a copy of the foregoing Defendants' Objection To Magistrate's Order to Exclude Reports and Testimony of Brian Clarkson, was electronically filed and served via the CM/ECF system upon counsel of record in this matter

Isaac N. Sutphin
Holland & Hart LLP
P.O. Box 1347
Cheyenne, WY 82003-1347
insutphin@hollandhart.com

T. Scott Thompson
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
555 12th St. NW Ste. 1100
Washington, CD 20004
sthompson@mintz.com

                                      /s/ *B*ryan A. Skoric          .
                                      Bryan A. Skoric