Isaac N. Sutphin, P.C. (Wyo. State Bar # 6-3711)
Andrea N. Graves (Wyo. State Bar # 8-6702)
HOLLAND & HART LLP
2020 Carey Avenue, Suite 800
P.O. Box 1347
Cheyenne, WY  82003-1347
Telephone: (307) 778-4200
insutphin@hollandhart.com
angrave@hollandhart.com

Scott Thompson (Admitted *pro hac vice*)
Jonathan P. Garvin (Admitted *pro hac vice*)
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
555 12th Street NW, Suite 1100
Washington, DC 20004
Telephone: (202) 434-7440
SThompson@mintz.com

ATTORNEYS FOR PLAINTIFFS
HORIZON TOWER LIMITED, LLC
and HORIZON TOWER, LLC

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| HORIZON TOWER LIMITED, LLC and HORIZON TOWER, LLC,<br><br>            Plaintiffs,<br><br>    v.<br><br>PARK COUNTY, WYOMING; BOARD OF COUNTY COMMISSIONERS OF PARK COUNTY, WYOMING; DOSSIE OVERFIELD, LLOYD THIEL, LEE LIVINGSTON, SCOTT MANGOLD, and SCOTT STEWARD, in their official capacity as Members of the Board of County Commissioners for Park County, Wyoming;<br><br>            Defendants | Civil Action No.:  Case No. 23-CV-0037-ABJ |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' EMERGENCY MOTION FOR STAY PENDING APPEAL

Plaintiffs Horizon Tower Limited, LLC and Horizon Tower, LLC ("Horizon") hereby Oppose

Defendants' Park County, Wyoming; Board of County Commissioners of Park County, Wyoming;

Dossie Overfield, Lloyd Thiel, Lee Livingston, Scott Steward and Scott Mangold (collectively the

"County"), Emergency Motion for Temporary Stay Pending Appeal (Dkt. 92.)

## I.    INTRODUCTION AND SUMMARY

The County's latest attempt to further delay Horizon's tower is meritless and must not be permitted to succeed.  There is no imminent threat of irreparable harm.  The County introduces no evidence demonstrating that it will suffer *any* actual harm from issuing the special use permit ("SUP"), much less that the harm would be irreparable.  Any impact of the tower when finally constructed is purely speculative.  Moreover, even if construction of the tower could be considered actual and irreparable harm, it is not "imminent."  Construction of the tower will take approximately 9 months.  And even if the County succeeds, the tower could be removed.

In contrast, granting the County's request will irreparably harm Horizon.  The only remedy available to Horizon for the County's unlawful denial of Horizon's SUP is expedited treatment of Horizon's claims; Horizon cannot recover monetary damages for lost revenues or any other harms.  *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113 (2005); 47 U.S.C. § 332(c)(7)(B)(v).  Horizon cannot recover lost time.

The County is also not likely to succeed on appeal.  The County's rehashing of its arguments related to the applicability of *Loper Bright*, the Hobbs Act, and the Federal Communications Commission's ("FCC") *2018 Declaratory Ruling* are substantively incorrect, but critically, they are irrelevant because this Court ultimately ruled under the Tenth Circuit's pre-2018 standard.  The County also is unlikely to succeed under the Tenth Circuit's "significant gap/least intrusive means" standard.  The County identifies no flaws in the Court's analysis.  Instead, the County focuses on a single phrase from Horizon's expert's deposition that the tower's coverage objective was to extend coverage "as far east and west [as] coverage is possible."  Yet, the County never advanced this argument in its summary judgment briefs.  Moreover, the argument grossly mischaracterizes the witness's testimony, and the County cites no caselaw supporting its new argument.  Finally, the

County is unlikely to succeed on the merits of the "substantial evidence" claim. The County demonstrates no error in the Court's analysis, and the County's assertion that "65% of the land ownership in the area" opposed the tower mischaracterizes the record evidence and is unsupported by case law.

Accordingly, the County's Motion should be denied.

## II.    LEGAL STANDARD

The County cites the wrong rule and standard governing its Motion. The standard for a stay regarding equitable relief, like the Court's affirmative order here, is governed by Fed. R. Civ. P. 62(c) & (d). Rule 62(c) provides that "an interlocutory or final judgment in an action for an injunction" will not be stayed unless the court orders otherwise. Rule 62(d) allows a court to suspend, restore, modify, or grant an injunction—on terms that secure the opposing party's rights—while an appeal is pending from a final judgment granting an injunction. Fed. R. Civ. P. 62(d).

A movant's request for a stay for equitable relief is evaluated under a four-factor framework. *See Nken v. Holder,* 556 U.S. 418, 434, (2009); *see also* 10th Cir. R. 8.1. Those factors include: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken*, 556 U.S. at 434; *see also, e.g., Brent Elec. Co. v. IBEW Loc. Union No. 584*, 2024 WL 66039 (N.D. Ok. Jan. 5, 2024). The first two factors are the most critical in determining whether a stay is appropriate. *See Nken,* 556 U.S. at 434.

## III.    ARGUMENT

### A.    The County Cannot Establish Imminent, Actual Irreparable Harm.

To demonstrate irreparable harm, a movant's alleged injury "must be both certain and great" and not "merely serious or substantial." *New Mexico Dep't of Game & Fish v. United States Dep't*

*of the Interior*, 854 F.3d 1236, 1250 (10th Cir. 2017).  Further, "[p]urely speculative harm will not suffice." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009).  The party attempting to demonstrate irreparable harm must show that "the injury complained of is of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003); *Nken*, 556 U.S. at 434 ("simply showing some possibility of irreparable injury fails to satisfy the [irreparable injury] factor").  The County does not remotely satisfy this standard.

The County will not suffer *certain*, *actual* harm by issuing the SUP.  As the County itself recognizes, "[t]o constitute irreparable harm and injury must be imminent, certain, actual and *not speculative.*" (Dkt. 92 at 5 (quoting *Colorado v. U.S. Envtl. Prot. Agency,* 989 F.3d 874, 886 (10th Cir. 2021) (emphasis added).)  The County's assertion that construction of the tower would "mar" the most traveled route in the County is purely speculative, based on the subjective views of unidentified people.  (Dkt. at 6.) The County's speculative argument about potential future subjective harm is even more remote than the argument regarding impact on neighboring properties rejected in *Up State Tower Co., LLC v. Town of Kiantone*, 2020 WL 1909981 at \*3 (W.D.N.Y. Apr. 20, 2020).  Moreover, because it will take approximately 9 months, construction may never occur before resolution of the County's appeal.  Thus, the injury alleged by the County's request is entirely speculative, not "certain [or] actual." *Colorado*, 989 F.3d at 886.  The County's reliance on *Valley Cmty. Pres. Comm'n v. Mineta* is inapposite.  Environmental harm, as addressed in that case, refers to damage to land and structures along the expansion of the highway.  *Valley Cmty. Pres. Comm'n v. Mineta*, 373 F.3d 1078, 1086 (10th Cir. 2004).  *Mineta* had nothing to do with potential aesthetic impacts to unknown third parties.

The County's argument that it is irreparably harmed by "being deprived of [its] power and

4

duty to enforce County zoning regulations and procedures" presupposes that the tower does not comply with zoning regulations and procedures, and it conflicts with the federal statute, which limits the authority of local governments.  (Dkt. 92 at 6.)  As this Court held, the County's denial of Horizon's SUP violates federal law.  The court in *Up State Tower* rejected the same argument for those reasons.  2020 WL 1909981 at *3.  The County's reliance on *New Mexico*, 854 F.3d at 1254-55, is inapt, with the issues being unrelated to the situation before this Court.

Critically, even assuming the County could demonstrate actual harm, which it cannot, that harm would certainly not be *imminent*.  Because of the multiple steps that must be accomplished first, the tower would not be fully constructed for approximately **nine months**—July 2025.  As described in the accompanying Declaration of Mr. Mathisen, after the County grants the SUP, Horizon would still need to undertake multiple steps, such as soil testing, foundation designs, preparation of construction drawings and tower design drawings, fabrication of the tower structure by the manufacturer, and final construction.  (Decl. of Michael Mathisen In Resp. to Mot. For Stay Pending Appeal ¶¶ 4-5 (attached hereto as Exhibit A).)  Based on Horizon's experience and assuming typical timelines, it will be approximately July 2025 before the tower would be constructed at the site.  *Id.*  That is not "imminent" harm.

**B.    Horizon Will Be Irreparably Harmed by Grant Of The Stay.**

In contrast to the lack of imminent, actual, irreparable harm to the County, grant of the stay would immediately and irreparably harm Horizon.  Horizon's *only* recourse for violations of Section 332 is expedited relief, such as that offered by the Court's Order.  *See* 47 U.S.C. § 332(c)(7)(B)(v); *Rancho Palos Verdes,* 544 U.S. at 120-23.  The entire statutory scheme of Section 332(c)(7)(B) recognizes the critical need for prompt deployment of wireless services and facilities. Section 332(c)(7)(B)(ii) requires local governments to act "within a reasonable period of time."  47 U.S.C. § 332(c)(7)(B)(ii).  Rules implementing this provision require local governments to act

within 150 days on an application to install a tower.  47 C.F.R. § 1.6003(c)(iv).   Section 332(c)(7)(B)(v) of the statute requires any action challenging a denial under Section 332 to be filed within 30 days, and the Court must then hear and decide the challenge on an expedited basis.  47 U.S.C. § 332(c)(7)(B)(v).

Granting the County an indefinite stay in a case **where the original application was submitted by Horizon on October 22, 2022**, (Dkt. 1 ¶ 25), will deprive Horizon of the only recourse available despite the fact that, in the meantime, Horizon is unable to build the tower and Verizon and other providers are unable to provide service to remedy the significant gap in service.  Horizon has no recourse for the lost revenues or the costs of the litigation.  *Rancho Palos Verdes,* 544 U.S. at 120-23.  The County fails to address these harms, much less provide any evidence demonstrating that Horizon "will suffer no harm by temporary delay in construction of the tower" and that "a stay will be a benefit."  (Dkt. 92 at 6.)  Instead, granting the County's stay will result in further delay, burdens, and lost revenues for Horizon.

### C.    The County is Not Likely to Succeed on the Merits.

Success on the merits requires "more than a possibility of relief" or chances that are "better than negligible."  *Nken,* 556 U.S. at 434.  Rather, the County must show that it is likely to succeed on the merits of its claim.  *See Dine Citizens Against Ruining Our Env't v. Jewell,* 839 F.3d 1276, 1282 (10th Cir. 2016).  The County cannot meet that high bar.

#### 1.  *Loper Bright*, the Hobbs Act, and the *2018 FCC Declaratory Ruling* are Not Grounds For Success On Appeal.

The County's focus on the impact of the FCC's *2018 Declaratory Ruling* under the Hobbs Act and *Loper Bright v. Raimondo,* 144 S. Ct. 2244 (2024), is misplaced.  The County's arguments are substantively erroneous for the reasons the Court articulated in its Order and Horizon set forth in its response to the County's supplemental brief.  And simply rehashing arguments already

rejected by the Court is not grounds for a stay.  *Up State Tower*, 2020 WL 1909981 at *3. Nonetheless, the Court's Order is clear that it ultimately found the County's denial unlawful by applying the Tenth Circuit's pre-2018 "significant gap" and "least intrusive means" test.  (Dkt. 89 at 19-24.)  Thus, whether the Court was correct in its discussion of the impact, if any, of the Hobbs Act or *Loper Bright* is irrelevant; even if the Court was wrong about the Hobbs Act or *Loper Bright*, it would not impact the Court's holding that the County violated the statute under the Tenth Circuit's established standard.

### 2. The County Is Not Likely To Succeed On The Effective Prohibition Claim.

The County's sole basis for asserting that the Tenth Circuit is "unlikely" (which is not the standard) to affirm the Court's holding is a new theory that the coverage objective was to extend coverage "as far as east and west coverage is possible." (Dkt. 92 at 4.)  First, the County did not raise this argument in its Cross-Motion for Summary Judgment or in its Opposition to Horizon's Motion for Summary Judgment.  *See* Dkts. 51, 54, 57.  The County first asserted this theory as an improper new argument as part of its supplemental brief regarding the alleged impact of the Supreme Court's decision in *Loper Bright*.  *See* Dkt. 81 at 10-13.  Accordingly, this argument cannot be grounds for the County to succeed on appeal.

Second, even if timely, the argument is factually and legally unsupported.  Factually, the County is mischaracterizing the evidence regarding the radio frequency objective of the proposed tower.  The County cherry-picks a portion of a sentence from the deposition of Horizon's radio frequency expert, but in doing so, the County ignores Mr. Kennedy's full statement and his repeated testimony emphasizing that the primary objective was not simply to reach as far as possible, but to serve the population area in Wapiti Valley and also east and west along Highway 20.  He makes this point multiple times in his deposition.  *See, e.g.*, Dkt. 54-3 at 56:15-18 ("As far as east and west coverage is possible **and provide service to the surrounding houses and businesses**" (emphasis

added)); 71:5-11 ("***The primary objective was the people that live in the Wapiti Valley and the commercial area in the Wapiti Valley*** as well as Highway 20." (emphasis added)); 59:4-11 ("To know exactly what, I don't remember word-for-word what [the wireless carrier's statement of objective] states in the system data base [sic] of what exactly their coverage objective was like down to the granular detail.  But I can give you an idea that the coverage objective is on Highway 20 east and west of Wapiti Valley as far as it can go ***and so to cover the homes and businesses in the area***" (emphasis added)); *see also* Kennedy Dep. Tr. at 74:5-8 (same); 82:1-4 (same); 94:9-23 (same) (excerpts attached hereto as Exhibit B).  Moreover, Mr. Kennedy testified at the County hearing that it was critical to locate the tower to cover the residential areas, not the "elk and squirrels." (Dkt. 46-13 at 7 of 31).

The County also ignores Mr. Kennedy's testimony that to achieve coverage "as far as" possible would require a 250-foot-tall tower.  (Dkt. 46-13 at 26:22-27:9.)  Thus, the proposed tower height of 195 feet is less than required to fully achieve the objective in his opinion; he found that anything less than 195 feet would not achieve the objective at all.  (Dkt. 81-1 at 52:7-23; 53:19-24; 54:6-8; 55:1-2.)  The County also fails to recognize that the search ring issued by Verizon defined and restrained the objective and the potential location of alternatives.  (Dkt. 89 at 3, 23.)

Ultimately, the County's new argument is also contradicted by the County's own testimony.  The County asserts, essentially, that it cannot identify an alternative because the objective was "unbound" coverage.  (Dkt. 92 at 4-5.)  Yet, as the Court correctly recognized, the County's own Rule 30(b)(6) witness testified that there was no alternative that Horizon did not investigate but should have.  (Dkt. 89 at 22-23.)  The County's *post hoc* assertion that it could not identify alternatives is unsupported by the evidence from its own witness.

Ultimately, the County cites no case for its argument that a proposed tower cannot be the

least intrusive if its objective is maximum coverage.  Indeed, a single tower that provides maximum coverage can easily be less intrusive than multiple towers achieving the same coverage.

### 3.  The County Is Not Likely To Succeed On The Substantial Evidence Claim.

The County also is not likely to succeed on the Court's holding that the denial violated 47 U.S.C. § 332(c)(7)(B)(iii).  As the Court correctly explained, the County must issue "a decision along with a supporting record sufficient to allow a reviewing court to identify the reason or reasons why the locality denied the application.  If the record as a whole contains conflicting evidence, the fact-finder must adequately explain its reasons for rejecting or discrediting competent evidence." (Dkt. 89 at 25; *see also id.* at 26 ("[The Board's decision] must describe the reasons for the denial and contain sufficient explanation of those reasons to allow a reviewing court to evaluate the evidence in the record that supports those reasons.").)  The Court correctly found that "the Board's decision fails to explain its reasoning to any level that would allow this court to identify its considerations."  (Dkt. 89 at 28.)

The County's Motion fails to identify any error in the Court's reasoning to satisfy the heavy burden of likelihood of success.  Instead, the County appears to advance a plea based on opposition by large landowners.  But, the County's argument that 65% of the "land ownership" opposes the tower is unavailing because Section 332's "substantial evidence" standard does not depend on the mere volume of the opposition or the size of their land holdings.  Generalized opposition to wireless is not substantial evidence, and the Court correctly held that the County's denial failed to explain why it accepted certain anti-tower comments over evidence supporting the tower.   (Dkt. 89 at 29.)

Moreover, the Court also correctly held that the County's denial misstated and misapplied the County's own zoning standard, "substantially lower[ing] the threshold for an adverse finding against the proposed project."  (Dkt. 89 at 30.)  The County's Motion does not address this finding or offer anything showing the County is likely to succeed on this issue on appeal.

9

**D.      The Public Interest Favors Denying the County's Request.**

The public interest will not be served by granting the County's request for a stay.  Courts have long recognized a significant public policy interest in wireless communications infrastructure deployment.  *See, e.g., Rancho Palos Verdes*, 544 U.S. at 115; *T-Mobile Cent., LLC v. Unified Gov't of Wyandotte Cnty.*, 546 F.3d 1299, 1306 (10th Cir. 2008); *Up State Tower*, 2020 WL 1909981 at *4 (denying stay pending appeal because it would delay the deployment of a tower needed to remedy a coverage gap).

In opposition to this national interest, the County argues that area residents have chosen to live in and travel through areas that lack wireless communications services and prefer this lifestyle. But communications services consumers are also members of the community and have an interest in the availability of such services.  Even if it is true that 65% of the "land ownership" opposed construction of the tower, those landowners cannot be allowed to deny the rest of the community and those traveling through the area modern communications technology and services. Likewise, "the 65%" cannot force travelers in the area to suffer harm in the event of car accidents and breakdowns due to their supposed preference to live in an area without communications services.  Congress passed Section 332(c)(7)(B) to facilitate the development of a national wireless communications system unhampered by a "conflicting patchwork" of state and local wireless regulations. *Rancho Palos Verdes*, 544 U.S. at 127-28 (Breyer, J., concurring) (quoting H. R. Rep. No. 104-204, pt. 1, p. 94 (1995)); *see also, e.g., Intermax Towers, LLC v. Ada Cnty.,* 2024 WL 129033 (D. Idaho Jan. 11, 2024) (citing *id.*).  The type of generalized opposition the County relies on, creating an effective prohibition of service, is precisely why Congress preempted the issue.

**IV.      CONCLUSION**

Based on the foregoing, the Court should deny the Motion.

DATED:  October 11, 2024.                    Respectfully Submitted,

                                             */s/ Isaac N. Sutphin*
                                             Isaac N. Sutphin, P.C. (Wyo. State Bar # 6-3711)
                                             Andrea N. Grave (Wyo. State Bar # 8-6702)
                                             HOLLAND & HART LLP
                                             2020 Carey Avenue, Suite 800
                                             P.O. Box 1347
                                             Cheyenne, WY 82003
                                             Telephone: (307) 778-4200
                                             insutphin@hollandhart.com
                                             angrave@hollandhart.com

                                             */s/ Scott Thompson*
                                             Scott Thompson (Admitted *pro hac vice*)
                                             Jonathan P. Garvin (Admitted *pro hac vice*)
                                             Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
                                             555 12th Street NW, Suite 100
                                             Washington, DC 20004
                                             Telephone: (202) 434-7440
                                             SThompson@mintz.com
                                             JPGarvin@mintz.com

                                             ATTORNEYS FOR PLAINTIFFS
                                             HORIZON TOWER LIMITED, LLC
                                             and HORIZON TOWER, LLC.

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of October 2024, a copy of the foregoing was electronically filed and served via the CM/ECF system upon counsel of record:

> BRYAN A. SKORIC, Park County Attorney
> DUSTIN N. SLADE, Deputy Park County Attorney
> 1002 Sheridan Avenue
> Cody, Wyoming, 82414

> */s/ Isaac N. Sutphin*
> Isaac N. Sutphin, P.C.